EUGENE R. MILLIKEN & others [1] *vs.* TOWN OF LITTLETON
& others. [2]

Middlesex.   March 8, 1972. — April 10, 1972.

Present: TAURO, C.J., CUTTER, SPIEGEL, REARDON, & HENNESSEY, JJ.

*Charity.   Trust,* Charitable trust.   *Municipal Corporations,* Trusts,
  Library, Officers and agents.   *Littleton.*

Where a trust deed of library property to a town provided that the
    trustees should be chosen by the town "in such manner" as it
    "may determine," but that it was "the desire of the grantors"
    that, "if it be deemed expedient," the trustees of another trust
    should also be trustees of the trust in question, the latter clause
    was merely precatory and left to the town's judgment the decision
    whether to comply with it, and no contract with the town con-
    cerning the selection of trustees was created. [577–580]
Where compliance with provisions concerning the selection of library
    trustees in instruments creating trusts for the benefit of a
    town's library had become inappropriate in view of the greatly
    predominant use of public funds rather than donated money in
    meeting the annual expenses of the library and the trustees' duties
    had become by changed circumstances primarily those of public
    officials rather than those of trustees of donated public charitable
    trusts, the town should comply with the provisions of G. L. c. 78,
    § 10, respecting the election of library trustees [580–581]; and
    consequently the nomination papers of a candidate for the public
    office of town library trustee must be accepted by the registrars
    of voters notwithstanding that he did not meet certain qualifica-
    tions of a trustee specified in the trust instruments. [577, 581]

BILL IN EQUITY filed in the Superior Court on February
3, 1971.

The case was reported without decision by *Roy,* J.

*Thomas R. Morse, Jr.,* for the defendants.
*Allan R. Rosenberg* for the plaintiffs.

CUTTER, J.   This bill for declaratory and other relief is
before us upon a report without decision.   There are

---

[1] Various residents, voters, and taxpayers in Littleton, more than
ten in number.

[2] The town clerk and the town's registrars of voters are also de-
fendants.

statements of agreed facts which amount to a case stated. The question presented is whether Milliken's nomination papers as a candidate for the public office of town library trustee must be accepted by the registrars of voters notwithstanding the fact that he does not meet certain qualifications specified in two trusts for the benefit of the town and its library. The town public library consists of a building, the "Houghton Memorial," and of a book collection known as the Reuben Hoar Library. The building and the collection had their origin in the gifts mentioned below.

In 1885, William Stevens Houghton gave to the town $10,000 (the Reuben Hoar Trust). One-half of the gift was to be used (apparently immediately) to buy books. One-half was to be a fund of which the income was to be "expended yearly in books." The library and fund, by the "conditions of the gift" were to be "put in charge of seven trustees, as follows: Pastor of the Unitarian Church and one layman, pastor of the Congregational Church and one layman, pastor of the Baptist Church and one layman, and one Selectman." Beginning with the town election in 1886, "it has been the custom for one of the three layman trustees to be elected each year for a term of three years, at the annual town elections . . . but with the . . . qualification that such trustee be a member of that one of the three named churches which would not otherwise be represented by a layman trustee." Since 1895, the town's custom has been to have the trustees of the Reuben Hoar Library serve as trustees of the "Houghton Memorial" building.

After the death of William Stevens Houghton, his children undertook to give to the town a building to house the Reuben Hoar library. The town made available a parcel of town land, and in 1895, the Houghtons conveyed to the town (which had accepted the gift) the library and its equipment in trust (the Houghton Trust) upon the following terms: *"First:* The building shall be maintained . . . for the free use of all the [town's] inhabitants . . . . *Second:* . . . [T]he expenses of . . .

maintenance and repair . . . shall be provided for by . . . [t]he [t]own . . . . *Third:* The management and control of . . . [the] building shall be given to [t]rustees to be chosen by the [t]own *in such manner and with such powers as* . . . *[the] [t]own may determine,* from time to time, at any legally called meeting of the voters . . . but it is the *desire* of the grantors . . . that, *if it be deemed expedient,* the [t]rustees for the time being of the Reuben Hoar Library shall be also the [t]rustees hereunder" (emphasis supplied).

In 1968 and 1969, the expenditures of the town library, both for new books and other expenses, paid by the town from public funds, greatly exceeded the very modest income available from the Reuben Hoar Trust and the Houghton Trust. For the year 1971, the town "determined" and the town clerk carried out "that determination that only members of the Baptist Church . . . [were] eligible as candidates" for the office of library trustee.

The plaintiffs contend in effect that the town policy, of electing only lay trustees who meet the stipulations of the Reuben Hoar Trust, deprives Milliken of eligibility to hold public office guaranteed to him by the Constitution of the United States and by the Constitution of the Commonwealth.[3] The town finds itself in a somewhat difficult position because of a desire, evident at the arguments, to comply with the trust provisions (already mentioned) and also fairly to recognize the circumstance that currently the town is paying from public funds the great bulk of its library expenses rather than defraying any substantial part of those expenses from trust income.

Towns may establish public libraries "and may re-

---

[3] The briefs refer to the equal protection clause of the Fourteenth Amendment to the Constitution of the United States and to art. 9 of the Declaration of Rights of the Constitution of the Commonwealth, which reads, "All elections ought to be free; and all the inhabitants of this Commonwealth, having such qualifications as they shall establish by their frame of government, have an equal right to elect officers, and to be elected, for public employments."

ceive . . . any gift . . . therefor." G. L. c. 78, § 7. That chapter also provides for the election and powers of town library trustees.[4] From their statutory duties, powers and method of selection, they are in some respects public officials, subject to provisions italicized in the margin. In the present case, however, it is not clear whether these library trustees necessarily are acting as public officials when they exercise all the responsibilities as trustees of the Reuben Hoar Trust and the Houghton Trust. See *Boston* v. *Doyle,* 184 Mass. 373, 382. The italicized language constitutes a statutory direction to municipalities to pay appropriate respect to valid terms and conditions of library gifts and bequests made to or for the benefit of the town and accepted by it. Where such gifts have been made and accepted in a manner to create binding legal obligations concerning the manner of management, the administrative terms of the gifts generally have been enforced. See e.g. *Cary Library* v. *Bliss,* 151 Mass. 364, 374–378; *Adams* v. *Plunkett,* 274 Mass. 453, 462–465; *Mahoney* v. *Attorney Gen.* 346 Mass. 709, 713–715; *Worcester* v. *Directors of the Worcester Free Pub. Library,* 349 Mass. 601, 603; Scott, Trusts 3d ed.) §§ 399.4, 399.5.[5] See also *Boston* v. *Doyle,*

---

[4] The following provisions (emphasis supplied) of c. 78 are pertinent: § 10. "A town which . . . appropriates money for the support of a free public library . . . owned by the town, shall, *unless the same has been acquired entirely or in part through some gift or bequest which contains other conditions or provisions for the election of its trustees, or for its care and management, which have been accepted by the town,* elect by ballot at a meeting a board of trustees consisting of any number of persons, male or female, divisible by three which the town determines to elect. When such board is first chosen, one third thereof shall be elected for one year, one third for two years and one third for three years, and thereafter one third shall be elected annually for a term of three years. . . ." § 11 (as appearing in St. 1952, c. 585, § 16): "The board shall have the custody and management of the library . . . and of all property owned by the town relating thereto. All money . . . appropriated by the town for its support and maintenance shall be expended by the board, and all money or property which the town may receive by gift or bequest for said library . . . shall be administered by the board *in accordance with the provisions of such gift or bequest.* . . ."

[5] There is here involved no religious or racial discrimination among the charitable beneficiaries of either the Reuben Hoar Trust or the Houghton Trust, such as the racial discriminations considered in

184 Mass. 373, 382–387; *Franklin Foundation* v. *Boston,* 336 Mass. 39, 46–47; *Franklin Foundation* v. *Attorney Gen.* 340 Mass. 197, 201, 204–207; *Salem* v. *Attorney Gen.* 344 Mass. 626, 631.

We see no occasion in the present instance for discussing various constitutional issues argued to us (see e.g. fn. 3). The Houghton Trust by its express language imposes no such inflexible mandate on the town as either (a) to compel the town to follow the administrative provisions of the Reuben Hoar Trust with respect to the eligibility of trustees, or (b) to constitute a contract with the town concerning the trustees, the obligation of which may not validly be impaired by later town or legislative action. Only the "desire" of the grantors is expressed in the pertinent part of the trust deed, and that desire is to be enforced only "if it be deemed expedient" that the trustees of the Reuben Hoar Library "be also the [t]rustees hereunder." Although the intention of the Houghton Trust grantors to create a public charitable gift is clear (cf. Scott, Trusts [3d ed.] § 25.4) the administrative provision concerning the trustees is precatory rather than mandatory in character. We view it as intended to subject to the town's judgment the decision whether to comply with the provision.

Compliance with this provision has now become at least inappropriate in view of the greatly predominant use of public funds rather than donated money in meeting the annual expenses of the library.[6] We are of

cases like *Pennsylvania* v. *Board of Directors of City Trusts of Philadelphia,* 353 U. S. 230, 231, and *Evans* v. *Newton,* 382 U. S. 296, 301–302, *S. C.* sub nom. *Evans* v. *Abney,* 396 U. S. 435, 444–448. See Scott, Trusts (3d ed.) § 399.4. We assume that a religious restriction, as such, may not be imposed as a test for holding public office. See *Torcaso* v. *Watkins,* 367 U. S. 488, 494–496; *Schowgurow* v. *State,* 240 Md. 121, 128.

[6] This heavy use of public funds raised by taxation, rather than trust funds, necessarily leads to consideration of the extent to which the *Torcaso* case, 367 U. S. 488 (see fn. 5) may be applied in striking down restrictions (expressed in sectarian terms) on the persons qualified to perform quasi public or fiduciary functions with reference to the library. See also the Massachusetts constitutional provision already cited in fn. 3, *supra.*

opinion that the duties of library trustees in Littleton in fact have become by changed circumstances (cf. *Vigeant* v. *Postal Tel. Cable Co.* 260 Mass. 335, 342–343) primarily those of public officials rather than those of trustees of donated public charitable trusts. As already indicated, the terms of the Houghton Trust[7] present no contractual obstacle to recognizing the facts now prevailing. Accordingly, we think that there should be compliance with the principal provisions of G. L. c. 78, § 10, in the election of the library trustees, even though a small part of the town library's resources (the Reuben Hoar Trust) were given nearly ninety years ago by donors who contemplated and requested a different method of selecting trustees.

Obviously some future action by the town to revise its method of electing library trustees will now be required. We declare that Milliken's nomination papers were improperly refused and remand the case to the Superior Court for the framing of a final decree (a) making that declaration and (b) granting other declaratory relief consistent with this opinion. That decree, in the discretion of the Superior Court, may include suitable authorization for a deviation from the administrative provisions of the Reuben Hoar Trust or relief cy pres with respect to that trust.

*So ordered.*

---

[7] The Reuben Hoar Trust is more explicit, but it has now clearly become a relatively insignificant part of the town's library situation. Its restrictions should not be regarded as sufficient to prevent compliance with the principal provisions of c. 78, § 10, concerning the election of library trustees. If, to maintain a separate board of trustees for this now very small trust will be administratively impossible or burdensome, the remedy is to apply to a court of equity for leave to deviate from the administrative provisions of the gift or for a cy pres application. See *Trustees of Dartmouth College* v. *Quincy,* 357 Mass. 521, 531–533.