PAUL J. HALLAHAN & another[1] vs. HALTOM CORP.
& others.[2]

Barnstable.   January 22, 1979. — February 21, 1979.

Present: HALE, C.J., GRANT, & KASS, JJ.

*Corporation*, Stockholder, Close corporation. *Fiduciary.*

In an action by two minority shareholders of a close corporation, each
   of whom held 23¾ shares of the one hundred shares issued, as did
   two of the defendants, it was within the equity powers of the court
   to order that a fifth shareholder, who held five shares and had
   signed a proxy in favor of one of the defendants, return his shares
   to the corporation. [70-71]

CIVIL ACTION commenced in the Superior Court on
January 7, 1976.

The case was heard by *Leen, J.*

*John C. Creney* for David Thompson.

*David W. Pyne* for the plaintiffs.

KASS, J. The relief which the plaintiffs sought and ob-
tained in the court below arises out of a corporate "freeze-
out" by a shareholder majority, a phenomenon described
in *Donahue* v. *Rodd Electrotype Co.*, 367 Mass. 578, 588-
592 (1975).

We summarize the findings of the trial judge, which
neither side challenges. The plaintiffs Paul J. Hallahan
and G. Peter Hallahan, brothers, joined forces with the
defendants Charles M. Thompson and Errol M. Thomp-
son, also brothers, to launch a drinking and eating estab-
lishment in Hyannis known as the Quarter Deck Lounge.
For two weeks before opening for business in late June,

---

[1] G. Peter Hallahan.

[2] Charles M. Thompson, Errol M. Thompson and David Thompson.

1975, David Thompson, who was a cousin of the Thompson brothers and a carpenter by trade, helped the four joint venturers make renovations of the premises which the Quarter Deck Lounge occupied. After opening, the joint venturers, i.e. the brothers Hallahan and the brothers Thompson, decided to incorporate their venture, intending that there be four equal shareholders. On July 29, 1975, they filed articles of organization which established Haltom Corp. (Haltom), of which Charles Thompson was the president, Errol Thompson, the treasurer, and Paul Hallahan, the clerk. These three were also directors. Haltom issued one hundred shares of stock, 23¾ shares to each of Paul Hallahan, Peter Hallahan, Charles Thompson and Errol Thompson and five shares to David Thompson as partial payment for the carpentry work he performed in June. Paul Hallahan understood that the power among the shareholders remained equally divided between the Thompson brothers and the Hallahan brothers. The four venturers agreed that David Thompson would not actively participate in the business. After incorporation, but before he received his shares of stock, David Thompson signed a proxy in favor of Charles Thompson which was neither dated nor limited in time.

The directors of Haltom voted to petition the board of selectmen of the town of Barnstable (the local licensing authority) for transfer of the Quarter Deck alcoholic beverages license from Paul Hallahan and Errol Thompson to Haltom. That petition was granted and approved by the Alcoholic Beverages Control Commission on November 4, 1975, whereupon the transfer became effective. At this juncture the Hallahan and Thompson fraternities fell out. Charles and Errol Thompson called a stockholders' meeting at Paul Hallahan's home, without notice of the business to be transacted at the meeting. When the meeting convened the Thompsons said they had received complaints about the Hallahans' performance as bartenders. On those grounds, voting their shares and those of David Thompson, the Thompson brothers fired the

Hallahans as employees of the corporation. The Hallahans had not received any complaints from customers or from the Thompsons prior to the meeting.

The trial judge ordered David Thompson to return his five shares of stock to the corporation in exchange for $500, and from this judgment David Thompson has appealed.

The findings we have summarized describe a close corporation as defined in *Donahue* v. *Rodd Electrotype Co.*, 367 Mass. at 585-586. Haltom has a small number of stockholders, no ready market for its corporate stock, and substantial majority stockholder participation in the management, direction, and operations of the corporation. Within such a corporation the principal stockholders owe to each other and minority stockholders the rigorous fiduciary duty of partners and participants in a joint venture. *Id.* at pages 594-595. For persons in a partnership relation, as Judge Cardozo poetically phrased it, "not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior." *Meïnhard* v. *Salmon*, 249 N.Y. 458, 464 (1928). The peremptory discharge of the Hallahans without warning, when compensation as employees was the principal benefit which they could hope to enjoy from the enterprise,[3] is short of that standard. Depriving minority stockholders of corporate offices and employment is a particularly effective "freeze-out" device. *Wilkes* v. *Springside Nursing Home, Inc.*, 370 Mass. 842, 849 (1976). O'Neal, "Squeeze-Outs" of Minority Shareholders 59, 78-80 (1975). An investor in a close corporation typically depends on his salary as the principal return on his investment, since the "earnings of a close corporation . . . are distributed in major part in salaries, bonuses and retirement benefits." 1 O'Neal, Close Corporations § 1.07 (2d ed. 1971), cited with approval in the *Springside Nursing Home* case *supra*, at 850. That

---

[3] The trial judge found that Haltom's net income at the end of its first full year of operation was $7.00.

case teaches (at 851) that we must inquire whether the controlling group demonstrated a legitimate business purpose for its action. No such purpose appears in the unchallenged findings of the trial judge which, on the contrary, recite a peremptory seizure of control without prior warning.

A partner who judges himself oppressed has the option under G. L. c. 108A, § 31(1)(*b*), to cause dissolution by his express will when no definite term for the partnership or other particular undertaking is specified. As the *Donahue* case calls to attention (at 592), it is the plight of the minority stockholder that he "must own at least fifty percent of the shares" to file a petition for dissolution under G. L. c. 156B, § 99(*a*). It was in order to place the "partners" in that position that the trial judge ordered that David Thompson's five shares be returned to the corporation as treasury stock in exchange for $500, which reflected the value of $100 a share for repurchase of stock established in the articles of organization of Haltom. This restored the balance of control among the Hallahans and the Thompsons which the trial judge found the parties had envisioned and which they had a fiduciary duty to each other to maintain. The action of the trial judge was consistent with the generic similarity of the duties of stockholders in a close corporation to each other and partners in a partnership which the *Donahue* and *Springside Nursing Home* decisions have defined. A court exercising traditional equity powers has power to remedy the wrong complained of and to make the decree effective. *Nigro* v. *Conti*, 319 Mass. 480, 484 (1946).

*Judgment affirmed.*