Merola *v.* Exergen Corp.

STEVEN MEROLA *vs.* EXERGEN CORPORATION & another.[1]

No. 94-P-437.

Middlesex. February 16, 1995. - April 26, 1995.

Present: DREBEN, GILLERMAN, & LAURENCE, JJ.

Further appellate review granted, 420 Mass. 1105 (1995).

*Corporation*, Close corporation, Officers and agents, Stockholder. *Fiduciary. Employment*, Termination. *Accord and Satisfaction. Damages*, Mitigation. *Practice, Civil*, Judgment.

In a civil action brought by the plaintiff, a minority shareholder and employee of a corporation, against the majority shareholder of the corporation, the judge correctly concluded on the evidence presented that the corporation was closely held [464-465], that the defendant had violated his fiduciary duty to the plaintiff by terminating the plaintiff's employment without a legitimate business purpose [465-467], that the plaintiff had a reasonable expectation of continued employment as a result of his investment of capital in the corporation [467-470], and that the plaintiff's ownership of stock and employment duties were more than nominal [470].

A jury's finding in a civil action that a plaintiff's claim of deceit was barred by an accord and satisfaction into which the parties had entered did not preclude the judge from finding for the plaintiff on his other claim for breach of fiduciary duty, which she ruled the accord and satisfaction did not encompass. [471]

At a civil trial there was no error in the admission of certain evidence regarding the plaintiff's mitigation of damages. [471]

CIVIL ACTION commenced in the Superior Court Department on April 8, 1988.

The case was tried before *Maria I. Lopez*, J.

*Blair L. Perry* for the defendants.

*John W. Marshall* for the plaintiff.

GILLERMAN, J. After the defendant Francesco Pompei terminated the plaintiff's employment with the defendant corporation as vice president of operations, the plaintiff brought

---

[1]Francesco Pompei.

suit against the corporation and against Pompei, the corporation's president, chief executive officer, and controlling stockholder.[2] Count I of the complaint had been dismissed prior to trial; count II alleged that the plaintiff had been induced to work for the corporation by the defendant Pompei's knowingly false representations of continuing employment; and count III alleged that the corporation was a "close corporation," and that Pompei, as the majority stockholder, violated his fiduciary obligations to the plaintiff by terminating his employment without cause on April 16, 1987.

Before trial, the judge ruled that the parties would present their evidence on both counts to the jury, but that the court would make the findings of fact and conclusions of law on count III, the equity count, following the verdict of the jury.

The jury rendered a special verdict, answering written questions regarding count II and providing advisory answers regarding count III. The judge had instructed the jury to assume that the corporation was a "close corporation," see *Donahue* v. *Rodd Electrotype Co. of New England, Inc.,* 367 Mass. 578 (1975); *Wilkes* v. *Springside Nursing Home, Inc.,* 370 Mass 842, 851 (1976), but she had reserved to herself the final determination of that question. The jury concluded, as to count II, that there had been no deceit by Pompei.

After the trial, the judge issued her findings and rulings regarding count III. She concluded that Pompei, as majority stockholder, by discharging the plaintiff, had failed to perform his fiduciary obligations to the plaintiff, as a result of which the plaintiff was damaged to the extent of $50,000.

Regarding the plaintiff's claim that the defendant corporation was a "close corporation," the judge found that (i) the

---

[2]As of June 10, 1987, two months after the plaintiff's termination, there were twenty-one stockholders (counting each record owner of stock as one stockholder and without consolidating the Pompei family group), and 127,992 shares were issued and outstanding. Of that number, Pompei was the record owner of 80,000 shares. The next largest shareholder was one Robert Jenner who was the record owner of 20,000 shares. The third largest shareholder owned 5,554 shares. The plaintiff was the fourth largest stockholder; he and his wife, jointly, were the record owners of 5,300 shares.

shares of the corporation were not generally traded or offered for sale on any securities market, and there was no ready market for the corporation's stock; (ii) the corporation has had, and continues to have, a "small number of stockholders"; (iii) substantial majority shareholder participation in the management, direction and operations of the corporation has existed since its formation in 1980. On these subsidiary findings, the judge concluded that the defendant corporation was a "close corporation."

The judge's findings continued: Pompei, a majority stockholder of the corporation, owed a fiduciary duty to the plaintiff, a minority stockholder, which required Pompei to honor the plaintiff's reasonable expectations that he would receive a return on his investments with continued employment, and Pompei, by terminating the plaintiff's employment without any legitimate purpose in doing so, had failed to perform his fiduciary obligations to the plaintiff. The judge also ruled that the jury's finding of an accord and satisfaction did not bar the plaintiff's claim for compensation. The judge entered judgment against the defendants, jointly and severally, on count III in the amount of $50,000 (as recommended by the jury), plus interest and costs. The defendants filed a notice of appeal, and the plaintiff filed a notice of cross appeal.

The defendants argue that the corporation was not a "close corporation" because it appeared from the evidence at trial that the corporation itself provided a ready market for its stock by repurchasing stock at any stockholder's request. (The judge found that two and possibly three stockholders — not including the plaintiff — had sold their shares to the corporation more than one year after the plaintiff was terminated).

There is no merit to the argument. It is undisputed that the shares held by the plaintiff (and, inferentially, the shares held by the other twenty stockholders) were not registered under the Securities Act of 1933, as amended, and the sale of such securities, therefore, was restricted. See *Leader* v. *Hycor, Inc.*, 395 Mass. 215, 217 (1985). The outstanding stock of the corporation was also burdened by restrictions on

transfer which gave the corporation the right to purchase shares from any stockholder desiring to sell at a price offered by the stockholder, or determined by arbitration. See *Donahue* v. *Rodd Electrotype Co.*, 367 Mass. at 587 n.13.

The effect of these legal restraints was to foreclose the existence of a ready market for the corporation's stock. The "ready market" of which *Donahue* speaks at 586 does not refer, as the defendants argue, to the alleged readiness of a single buyer — here, the corporation acting through the controlling stockholder — to buy the stock of a stockholder desiring to sell his shares, see *Goode* v. *Ryan*, 397 Mass. 85, 90 (1986); it refers to an active trading market for the stock of the corporation where the price is determined by the behavior of numerous buyers and sellers, each acting independently of the other. See Principles of Corporate Governance § 1.06 (1994) (" 'closely held corporation' means a corporation the equity securities . . . of which are owned by a small number of persons, and for which securities no active trading market exists"). In the absence of such a market, as in this case, the plaintiff is likely to be obliged to deal with the controlling stockholder. See *Donahue* v. *Rodd Electrotype Co.*, 367 Mass. at 591. Compare *Bessette* v. *Bessette*, 385 Mass. 806, 808 n.4 (1982) (where the corporation is family owned, an inference can be drawn that there is no ready market for its stock).[3]

The defendants also argue that even if the corporation was a close corporation, there was no breach of any fiduciary duty owed to an at-will employee such as the plaintiff, because corporate law allows corporate officers "a large measure of discretion" in firing corporate officers and employees. *Wilkes* v. *Springside Nursing Home, Inc.*, 370 Mass. at 851. The argument fails to recognize that, where a minority stockholder in a close corporation brings suit alleging breach of the strict good faith duty, it "must be asked whether the

---

[3]In 1991, approximately four years after the plaintiff's termination, the corporation purchased the plaintiff's shares at the same price per share ($17.00) the corporation paid to the stockholders who had sold their stock in 1988 and 1989.

*controlling group* can demonstrate a legitimate business purpose for its action" (emphasis added). *Ibid.* Here, the judge concluded that there was no legitimate business purpose for not providing the plaintiff with continuing employment with the corporation — on its face, a breach of the fiduciary obligation owed to the plaintiff.[4] See *id.* at 849-850; *Leader* v. *Hycor, Inc.*, 395 Mass. at 222.

In reaching this conclusion, the judge adopted the advisory finding of the jury that the plaintiff had been denied continuing employment with the corporation without any legitimate business purpose, but she did not make any subsidiary findings in support of that ultimate conclusion. Nevertheless, "the judge's decision imports every finding essential to sustain it if there is evidence to support it." *Mailer* v. *Mailer*, 390 Mass. 371, 373 (1983). *Chase Precast Corp.* v. *John J. Paonessa Co.*, 409 Mass. 371, 377 n.7 (1991).[5]

There was such evidence here. Pompei claimed that the firing was due to Merola's being responsible for a level of inventory so high that it was threatening the company's financial stability. Merola testified that the high inventory was in fact Pompei's doing, and, in any event, did not impair the company's financial stability, and that the discharge was in fact due to Merola's having clashed with a female employee with whom Pompei was romantically involved.[6] This evidence was enough to support the inference that Pompei's motiva-

---

[4]Because the judge found that the termination had no legitimate business purpose, there was no need to reach the issue whether there was a less harmful alternative. See *Wilkes* v. *Springside Nursing Home, Inc.*, 370 Mass. at 851-852.

[5]Compare Mass.R.Civ.P. 49(a), 365 Mass. 814 (1974) (where a special verdict on written questions omits any issue of fact raised by the pleadings, a finding of such fact shall be deemed to have been made "in accord with the judgment of the special verdict").

[6]At a time not identified in the record, Pompei delivered a written message to the employees at a staff meeting. The message describes the "chemistry" that developed between Pompei and a Ms. Ryan. The message continues, in part, "The result is good and it should continue. Our relationship has blossomed into a very strong one in a very brief time, and has all the elements of becoming a complete and permanent one. This announcement is part of the process of working toward that goal. . . . We have explored the issues thoroughly with both spouses . . . who understand

tion for the discharge was to harm the plaintiff and not to benefit the corporation — an inference sufficient to justify the judge's conclusion. See *Wilkes* v. *Springside Nursing Home, Inc.*, 370 Mass. at 852; *Crowley* v. *Communications for Hosps., Inc.*, 30 Mass. App. Ct. 751, 758-759 (1991); Southgate & Glazer, Massachusetts Corporation Law and Practice § 16.3(a), at 516 (1991) ("The question is whether the majority has acted to achieve a *bona fide* [business] objective or to harm a member of the minority").

Responding still further, the defendants argue (relying on *Wilkes* v. *Springside Nursing Home, Inc.*, 370 Mass. at 852-853), that a fiduciary obligation does not arise absent evidence of a nexus between the plaintiff's investment of capital and his employment in the corporation. No doubt a nexus must be made out in cases such as the one before us,[7] but the judge specifically found the facts which establish such a nexus, as follows:

In late 1980, Pompei recruited the plaintiff, as a part-time employee, to help with the development of the corporation's first product, an electronic heat detection device. In late 1981, the plaintiff was invited to attend a stockholders' meeting at which a private stock offering was announced.[8] On

---

and support our actions. It is a credit to both that we can proceed with a clear conscience, and without guilt."

A former employee of the corporation testified that Ryan had told her that the plaintiff was terminated because he had told Pompei that his relationship with Ryan was not good for the company, and that the plaintiff's termination "was one indication of the power she now had, and that if anybody disagreed with her relationship with Frank, she could get the same thing to happen to them."

[7] In cases such as *Donahue* (preferential redemption of stock), which involve the use, or abuse, of corporate assets to gain a financial advantage for those in the controlling group of stockholders while refusing the same financial benefit to the minority, no nexus need be made out. But where the issue is one involving discretionary management decisions, such as firing stockholder-employees, the nexus between employment and stock ownership, as well as the reasonable expectations of the stockholder, become live issues. See *Wilkes* v. *Springside Nursing Home, Inc.*, 370 Mass. at 849-950.

[8] A brief offering statement dated January 31, 1982, appears in the record. Five thousand shares of the corporation's unregistered common stock was offered to each present stockholder and present part-time employee

February 1, 1982, Pompei wrote the plaintiff soliciting the plaintiff's interest in the offering, and emphasizing that the purchase of the corporation's stock "should be considered a long term investment. If the company is successful it may still be a number of years before your stock can produce cash by either dividends or sale of the stock." As a result of a conversation with Pompei on February 5, 1982, as well as an earlier conversation in late 1981, the plaintiff understood that if he came to work for the corporation full time and invested in its stock, he would have the opportunity to become a major stockholder in the corporation and to have continuing employment with the corporation.

Further, the judge found that as a result of his conversations with Pompei, the plaintiff decided to work full time for the corporation and to invest in the stock of the corporation. He made these decisions because of the opportunities offered for a major stockholder position as well as the opportunity for employment with security.

Thus, on March 1, 1982, the plaintiff accepted full-time employment, and from March, 1982, through June, 1982, he purchased 4,100 shares of the corporation for $9,225. He purchased an additional 1,200 shares in October, 1983, for $6,000.

On these subsidiary findings, the judge concluded that the plaintiff accepted full-time employment and invested his money in the corporation "with the reasonable expectations that he would receive a return in his investments with continued employment and with opportunities to become a major shareholder of Exergen."[9]

---

and consultant. At the time of the offering, 80,000 shares had been issued to Pompei, 20,000 shares to Robert Jenner, vice president, 8,002 shares to members of Pompei's family and 1,000 shares to one R.J. Wilson — a total of 109,002 shares of common stock outstanding. On July 16, 1982, 119,372 shares were outstanding, including 4,100 shares issued to the plaintiff, distributed among thirteen stockholders. By October 28, 1984, there were 124,472 shares outstanding distributed among 17 stockholders.

[9]The judge went on to find that the plaintiff was not provided with the opportunity to become a major shareholder of the corporation, that there was a legitimate business purpose in not doing so, that that purpose could

There was no failure of proof on the nexus issue. The required nexus may fall short of an enforceable contract, but that does not matter. All that is required is the express, or reasonably understood, coupling of continuing employment with the employee's investment in the equity securities of the corporation where there is no active trading market for those securities. The purpose of such a coupling (from the point of view of the corporation) is to acquire a valuable employee who might not otherwise be available and to compensate the employee at a level lower than what otherwise might be negotiated. From the point of view of the employee, by being allowed in on the "ground floor," he may realize the opportunity for long-term gain that otherwise would not be available. These are reasonable expectations that are deserving of respect and, if not honored, there is a breach of the duty owed the injured party. See *Bodio* v. *Ellis*, 401 Mass. 1, 10 (1987) (defendant's "contravention of . . . [plaintiff's] rightful expectation that he would have equal control with . . . [the defendant] and constituted a violation of the loyalty and fiduciary duty owed between the shareholders [of a closely held corporation]"); *Hallahan* v. *Haltom Corp.* 7 Mass. App. Ct. 68, 71 (1979) (trial judge restored the balance of control among stockholders in a closely held corporation which the trial judge found "the parties had envisioned and which they had a fiduciary duty to each other to maintain"). See also Southgate & Glazer, Massachusetts Corporation Law and Practice § 16.4(b), at 623 (1991) ("Under *Hallahan* and *Bodio*, a stockholder's expectations may arise from an express or implied understanding that falls short of an enforceable contract. The rightful expectations of the parties, not contract law, are controlling. Massachusetts courts, thus, have broad discretion when deciding when to protect stockholders whose expectations have been frustrated").

As *Wilkes* points out, this rule of faithful performance of reasonable expectations based on the conduct of the parties works no unfairness to the managements of closely held cor-

have been accomplished by a less harmful alternative, but that the plaintiff was not damaged as a result of the decision of the corporation.

porations, for so long as they act in furtherance of a legitimate business standard or goal, they "have a large measure of discretion . . . [in] hiring and firing corporate employees." *Wilkes* v. *Springside Nursing Home, Inc.*, 370 Mass. at 851.

There is no merit, either, to the defendant's argument that unless we reverse the judgment in this case, "[a]ny current at-will employee of a small corporation who owns one share of stock could state a claim for breach under the *Donahue* doctrine by merely alleging 'expectations' that they had prior to the stock purchase." Here, the judge found, the plaintiff held the title of manufacturing manager and vice president of operations; he was second in command to Pompei and was responsible for all operations except sales and engineering. He was, in short, a key member of the management team. He owned 4.1% of the outstanding shares of the corporation, which made him the fourth largest stockholder. That share of the company was slightly *more* than the share owned by the successful plaintiff in *King* v. *Driscoll*, 418 Mass. 576 (1994).[10] We leave to another day the question whether controlling stockholders have special duties to at-will employees who have acquired nominal stock ownership in a corporation with a substantial number of outstanding shares of equity securities.[11]

---

[10]The percentage of the outstanding shares of the company owned by the plaintiff in *King* does not appear in the opinion of the court. However, an examination of the findings of fact by the trial judge reveals that the plaintiff there owned slightly more than three percent of the outstanding stock.

[11]*Ingle* v. *Glamore Motor Sales, Inc.*, 73 N.Y.2d 183 (1989), upon which the defendants rely, is inapposite. There, the minority shareholder contractually agreed to the repurchase of his shares upon termination of his employment for any reason. The court held that the discharged stockholder acquired no rights against the corporation or the majority stockholder. No such agreement is present in this case, and, in any event, where the dispute has to do with the discharge, and not the agreement, the fiduciary duty remains in effect under Massachusetts law. See *King* v. *Driscoll*, 418 Mass. 576, 586 (1994) ("the existence of a buy back agreement [does not] completely relieve[ ] shareholders of the high duty owed to one another in all dealings among them").

Finally, the defendants argue that the plaintiff's claim is barred by the jury's finding that the "parties enter[ed] into an accord and satisfaction in compromise of the plaintiff's claim for compensation for a period of time after he had ceased to be an employee of Exergen." The judge instructed the jury that "[the] *claim for deceit* may be resolved in this case if you find that there was an accord and satisfaction" (emphasis added). There was no instruction that an accord and satisfaction could resolve the claim for breach of fiduciary duty, there was no objection to those instructions, and there is no reason to believe that the jury did not follow the judge's instructions.

Additionally, the judge found that the only evidence of an accord and satisfaction was negotiations about the amount due the plaintiff under the corporation's severance policy; those negotiations, the judge found, "did not include a claim for lost pay" — as distinct from (as the judge found) payment due upon termination for past services.

We conclude that the jury found that the accord and satisfaction resolved the claim for deceit, but that their answer did not, and was not intended to, resolve the plaintiff's claim for breach of fiduciary duty.

In his cross appeal, the plaintiff argues that there was error in the admission of certain evidence regarding the plaintiff's mitigation of damages. The challenged evidence had to do with testimony of Pompei regarding comparable jobs available to the plaintiff and the salary ranges for those jobs. There is an adequate foundation for this testimony in Pompei's personal experiences, and there is no basis for concluding that the jury's determination of damages was unsupported by the evidence.

We do, however, correct one error in these proceedings, although not argued by any party. Final judgment was rendered against both defendants, "jointly and severally." There is no basis for the liability of the defendant corporation to the plaintiff. The plaintiff established to the judge's satisfaction Pompei's breach of *his* fiduciary duty to the plaintiff. That provides a direct cause of action by the plaintiff against

Pompei, but not against the corporation. Contrast *Bessette* v. *Bessette*, 385 Mass. at 809-810 (where plaintiff establishes breach of fiduciary duty owed by the majority stockholder *to the corporation*, the plaintiff must proceed by way of a stock-holders' derivative suit). There are outside stockholders in the corporation whose interests are not represented in these proceedings, and they should be unaffected by the outcome of this controversy. For this reason, we modify the judgment to run only against the defendant Pompei. As so modified, we affirm the judgment.

*So ordered.*