STEVEN MEROLA *vs.* EXERGEN CORPORATION & another.[1]

Middlesex. April 2, 1996. - August 8, 1996.

Present: LIACOS, C.J., WILKINS, LYNCH, O'CONNOR, & GREANEY, JJ.

*Practice, Civil,* Findings by judge. *Fiduciary. Corporation,* Close corporation, Officers and agents, Stockholder. *Employment,* Termination.

A plaintiff who was terminated from his employment with a close corporation in accordance with his employment contract and who was fairly compensated for the redemption of his minority share stock did not establish that the president and majority shareholder had violated any fiduciary obligation by terminating the plaintiff without cause. [465-466]

CIVIL ACTION commenced in the Superior Court Department on April 8, 1988.

The case was tried before *Maria I. Lopez,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Blair L. Perry (Heidi E. Harvey* with him) for the defendants.

*John W. Marshall* for the plaintiff.

LYNCH, J. The plaintiff, a former vice president of Exergen Corporation (Exergen) and a former minority stockholder of that corporation, brought suit in the Superior Court against Exergen and the president and majority stockholder, Francesco Pompei, because of his termination as an officer and employee of Exergen. Count I of the complaint was dismissed prior to trial; count II (deceit) alleged that the plaintiff had been induced to work for the corporation by Pompei's knowingly false representations of continuing employment; and count III (breach of fiduciary duty) alleged that the corporation was a "close corporation," and that Pompei, as the majority stockholder, violated his fiduciary obligations to the plaintiff as a minority stockholder by terminating his employment without cause.

[1]Francesco Pompei.

The trial judge ruled that the jury would hear evidence on both counts, but that she would make findings of fact and conclusions of law on count III, the equity count, following the verdict of the jury. The jury rendered a verdict, answering special questions regarding count II and providing advisory answers regarding count III. The jury found that, on count II, there had been no deceit by Pompei.

On count III the judge found that the corporation was a "close corporation" and that Pompei had breached his fiduciary obligations to the plaintiff by failing to give him an opportunity to become a major stockholder and by terminating his employment. She adopted the jury's advisory conclusion that he had been damaged only by the termination of employment only to the extent of $50,000.

The Appeals Court affirmed the judgment as to Pompei, but modified it as to the corporation, holding that there was no basis for liability of Exergen to the plaintiff. 38 Mass. App. Ct. 462, 471-472 (1995). We granted the defendants' application for further appellate review[2] and now reverse the judgment of the Superior Court.

We summarize the facts found by the judge. Exergen was formed in May, 1980, as a corporation in the business of developing and selling infrared heat detection devices. From Exergen's inception to the date of trial, Pompei, the founder, was the majority shareholder in the corporation, as well as its president, owning over sixty per cent of the shares issued. At all relevant times, Pompei actively participated in and controlled the management of Exergen and, as the majority shareholder, had power to elect and change Exergen's board of directors.

The plaintiff began working for Exergen on a part-time basis in late 1980 while he was also employed full time by Analogic Corporation. In the course of conversations with Pompei in late 1981, and early 1982, the plaintiff was offered full-time employment with Exergen, and he understood that, if he came to work there and invested in Exergen stock, he would have the opportunity to become a major shareholder of Exergen and for continuing employment with Exergen.

As of March 1, 1982, the plaintiff resigned from Analogic

---

[2]Both Pompei and Exergen were the named defendants in the complaint, however, as the allegations relating to the breach of fiduciary duty apply only to Pompei, we refer only to him regarding this issue.

and began working full time for Exergen. He also then began purchasing shares in Exergen when the company made periodic offerings to its employees. From March, 1982, through June, 1982, the plaintiff purchased 4,100 shares at $2.25 per share, for a total of $9,225. Exergen announced at the Exergen shareholders meeting in September, 1982, another option program to purchase shares at $5 per share within one year. By late 1983, the plaintiff had exercised his option to purchase an additional 1,200 shares. The plaintiff was not offered additional stock options after late 1983.

In response to special questions the jury made the following findings which were adopted by the judge: (1) the plaintiff did not receive an opportunity to become a major shareholder of Exergen; (2) there was a legitimate business purpose for not providing the plaintiff an opportunity to become a major shareholder of Exergen; (3) this business purpose could have been accomplished through an alternative course of action less harmful to the plaintiff's interests; and (4) the plaintiff suffered no damages by not being able to become a major shareholder of Exergen.

With regard to the alleged breach of fiduciary duty for terminating the plaintiff's employment with Exergen, the judge adopted the following findings by the jury: (1) the plaintiff was terminated by Pompei on April 16, 1987, and therefore did not receive continuing employment by Exergen; (2) there was no legitimate business purpose for not continuing the plaintiff's employment by Exergen; and (3) the plaintiff suffered damages in lost wages, reduced by income from other employment, in the total amount of $50,000.

Findings of fact, made by the jury on issues to be decided by the judge, shall be viewed as the findings of the judge, if adopted, and therefore shall not be set aside unless clearly erroneous. See *Starr* v. *Fordham*, 420 Mass. 178, 182 (1995). See also Mass. R. Civ. P. 52 (a), 365 Mass. 816 (1974). Based on these findings, the judge ruled that, as matter of law, Pompei breached a fiduciary duty to the plaintiff to honor the reasonable expectations that the plaintiff had concerning investments of time and resources in Exergen,[3] and awarded the plaintiff $50,000 in damages.

*Breach of fiduciary duty.* In *Donahue* v. *Rodd Electrotype*

---

[3]Although the judge ruled that Exergen and Pompei shall be jointly and severally liable for the judgment, the claim for breach of fiduciary duty lies

*Co.*, 367 Mass. 578, 593 (1975), this court recognized a fiduciary duty by a majority shareholder of "utmost good faith and loyalty" toward shareholders of a close corporation. A claim based on this duty is an equitable claim against individual stockholders. *Zimmerman* v. *Bogoff*, 402 Mass. 650, 660-661 (1988). The determination whether a breach of this fiduciary duty has occurred is a matter of law for the court, as is the remedy for such breach. *Id.* at 661.

We agree with the judge's conclusion that Exergen was a close corporation, and that stockholders in a close corporation owe one another a fiduciary duty of "utmost good faith and loyalty." *Donahue* v. *Rodd Electrotype Co., supra* at 593. We, therefore, look to see whether the plaintiff has established a breach of that duty under the principles of *Donahue*. Even in close corporations, the majority interest "must have a large measure of discretion, for example, in declaring or withholding dividends, deciding whether to merge or consolidate, establishing the salaries of corporate officers, dismissing directors with or without cause, and hiring and firing corporate employees." *Wilkes* v. *Springside Nursing Home, Inc.*, 370 Mass. 842, 851 (1976).

Principles of employment law permit the termination of employees at will, with or without cause excepting situations within a narrow public policy exception. *King* v. *Driscoll*, 418 Mass. 576, 581-582 (1994), and cases cited. However, the termination of a minority shareholder's employment may present a situation where the majority interest has breached its fiduciary duty to the minority interest. *Id.* at 586. *Wilkes* v. *Springside Nursing Home, Inc., supra* at 852-853. There the court concluded that the majority stockholders had attempted unfairly to "freeze out" a minority stockholder by terminating his employment, in part because their policy and practice was to divide the available resources of the corporation equally by way of salaries to the shareholders who all participated in the operation of the enterprise. *Id.* at 846. As the investment became more profitable, the salaries were increased. *Id.* The court recognized that "[t]he minority stockholder typically depends on his salary as the principal return on his investment, since the 'earnings of a close corporation . . . are distributed in major part in salaries,

only against the majority shareholder, not against the corporation. 38 Mass. App. Ct. 462, 471-472 (1995).

bonuses and retirement benefits.' " *Id.* at 850, quoting 1 F.H. O'Neal, Close Corporations § 1.07 (1971). Given those facts, this court concluded that the other shareholders did not show a legitimate business purpose for terminating the minority stockholder and that the other parties acted "in disregard of a long-standing policy of the stockholders that each would be a director of the corporation and that employment with the corporation would go hand in hand with stock ownership." *Id.* at 853.

Here, although the plaintiff invested in the stock of Exergen with the reasonable expectation of continued employment, there was no general policy regarding stock ownership and employment, and there was no evidence that any other stockholders had expectations of continuing employment because they purchased stock. The investment in the stock was an investment in the equity of the corporation which was not tied to employment in any formal way. The plaintiff acknowledged that he could have purchased 5,000 shares of stock while he was working part time before resigning from his position at Analogic Corporation and accepting full-time employment at Exergen. He testified that he was induced to work for Exergen with the promise that he could become a major stockholder. There was no testimony that he was ever required to buy stock as a condition of employment.

Unlike the *Wilkes* case, there was no evidence that the corporation distributed all profits to shareholders in the form of salaries. On the contrary, the perceived value of the stock increased during the time that the plaintiff was employed. The plaintiff first purchased his stock at $2.25 per share and, one year later, he purchased more for $5 per share. This indicated that there was some increase in value to the investment independent of the employment expectation. Neither was the plaintiff a founder of the business, his stock purchases were made after the business was established, and there was no suggestion that he had to purchase stock to keep his job.

The plaintiff testified that, when he sold his stock back to the corporation in 1991, he was paid $17 per share. This was a price that had been paid to other shareholders who sold their shares to the corporation at a previous date, and it is a price which, after consulting with his attorney, he concluded was a fair price. With this payment, the plaintiff realized a significant return on his capital investment independent of the salary he received as an employee.

We conclude that this is not a situation where the majority shareholder breached his fiduciary duty to a minority shareholder. "[T]he controlling group in a close corporation must have some room to maneuver in establishing the business policy of the corporation." *Wilkes* v. *Springside Nursing Home, Inc., supra* at 851. Although there was no legitimate business purpose for the termination of the plaintiff, neither was the termination for the financial gain of Pompei or contrary to established public policy. Not every discharge of an at-will employee of a close corporation who happens to own stock in the corporation gives rise to a successful breach of fiduciary duty claim. The plaintiff was terminated in accordance with his employment contract and fairly compensated for his stock. He failed to establish a sufficient basis for a breach of fiduciary duty claim under the principles of *Donahue* v. *Rodd Electrotype Co., supra.*

*The plaintiff's cross appeal.* The plaintiff argues that it was error to allow evidence regarding the salary of other positions available during the relevant period to show the plaintiff's failure to mitigate his damages. Because we have concluded that, as matter of law, the termination of the plaintiff did not constitute a breach of Pompei's fiduciary duty, evidence concerning damages is irrelevant.

*Judgment reversed.*