Gershengorn, Wendie I., J.
This is a dispute between employee-shareholders of plaintiff Data Cable Networks, Inc., a closely-held corporation. The case is before the court on Gogan’s motion for partial summary judgment on the plaintiffs’ breach of fiduciary duty claim (count II) and Gogan’s own breach of fiduciary duty counterclaim (count I). For the reasons set forth below, the motion is ALLOWED.
BACKGROUND
On or about January 9, 2002, plaintiffs John B. Ciccarello (“Ciccarello”) and Matthew S. Cox (“Cox”) along with defendant Matthew B. Gogan (“Gogan”) formed Cablenets, Inc. In or around April 1992, they changed the name of the corporation to Data Cable Networks, Inc. (“DCN”). DCN, located in Framingham, Massachusetts, is in the business of communications cable assembly and network installation. DCN is a closely held corporation; Ciccarello, Cox, and Gogan are the only directors, officers, and shareholders, and were the key employees of the corporation.
On May 3, 2004, Gogan approached Ciccarello and Cox to discuss the poor business condition of DCN. At this time, Gogan offered to buy out Ciccarello and Cox. Ciccarello and Cox refused; they were not interested in selling their shares. Gogan then inquired if either Ciccarello or Cox, or both, would be interested in buying Gogan’s shares of DCN. Ciccarello and Cox were both interested in the latter proposition. Therefore, Ciccarello, Cox, and Gogan decided to contact their accountant, Steven Gallant (“Gallant”) for a recommendation of an individual to perform a business valuation for DCN. Gallant recommended Howard Gordon (“Gordon”) of Gordon Associates to conduct the valuation. Gordon valued the company at approximately $3,000.
Between May 3, 2004, and May 10, 2004, Gogan forwarded DCN records to his home computer. Gogan testified at his deposition that this was a common practice that he would engage in when DCN had lost a bid. He stated that he would try and decipher why previous bids were successful but current bids were not.
Meanwhile, on or about May 6, 2004, Gogan and his wife filed the Articles of Organization for All Connect, Inc. (“ACI”) with the Massachusetts Secretaiy of the Commonwealth. On May 10, 2004, Ciccarello, Cox, and Gogan had another meeting. Ciccarello and Cox inquired into how Gogan had spent his time the prior week. It was not the practice of Ciccarello, Cox, and Gogan to have to account for their time.
On or about May 14, 2004, Ciccarello came upon ACI’s corporate filing and informed Cox of his discovery. Neither Ciccarello nor Cox contacted Gogan to discuss the formation of ACI. By the time Cox became aware of this information, he had “generated the sales figures for the year, which showed [Gogan] basically not doing a whole lot at all.” Cox Depo. 43:11-13. Cox testified that the sales figures for the pay period ending May 17, 2004, showed that Cox had “sold approximately 177,050-some clients” and Gogan had sold 41,000. Id. at 51:8-10. Cox further stated that he and Gogan typically sold around the same numbers, but there were definitely times that the numbers differed.
Ciccarello and Cox contacted an attorney to find out whether it was within their rights to “lock out” Gogan from the DCN office. Cox testified at his deposition that he and Ciccarello were concerned that Gogan would use DCN inventory for ACI. When the attorney informed Ciccarello and Cox that they were within their rights to “lock out" Gogan, they proceeded to change the locks on the inventory building.
On May 17, 2004, Ciccarello and Cox terminated Gogan. Ciccarello and Cox did not consider any other alternative besides terminating Gogan. Ciccarello and Cox told Gogan they were terminating him because he had started a competing company. Gogan took his company cell phone for his personal use after he was discharged. Cox testified at his deposition that he himself only had one cell phone, his company cell phone, that he used for all his calls, both business and personal.
After Gogan was terminated, Ciccarello contacted multiple DCN customers, but only with regards to any equipment that might have been left on site. He did not ask them whether Gogan had discussed ACI with them prior to his termination. Eight of DCN’s former clients are now clients of ACI. Gogan remains a shareholder and director of DCN; however, since his termi *521 nation, he has not received any compensation from DCN.
DISCUSSION
A. Standard of Review
Summary judgment shall be granted where there are no genuine issues of material fact and where the moving party is entitled to judgment as a matter of law. Mass:R.Civ.P. 56(c); Cassesso v. Comm’r of Corr., 390 Mass. 419, 422 (1983); Cmty. Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case, or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. Gen. Motors Corp., 410 Mass. 706, 716 (1991).
B. Breach of Fiduciary Duty (Count I)
It is the plaintiffs’ contention that Gogan breached his fiduciary duty to the corporation and to the individual plaintiffs as shareholders of the corporation, by competing with DCN. The plaintiffs have no reasonable expectation of proving this claim at trial, and therefore their claim must fail as a matter of law.
The shareholders of a “close corporation owe one another a fiduciary duty of ‘utmost good faith and loyalty.’ ” Merola v. Exergen Corp., 423 Mass. 461, 464 (1996), quoting Donahue v. Rodd Electrotype Co., 367 Mass. 578, 593 (1975). It is not a breach of fiduciary duty for Gogan to “plan and prepare for creation of a competing business” if he continues to carry out his commitments to DCN. Chelsea Indus., Inc. v. Gaffney, 389 Mass. 1, 10 (1983).
It is the plaintiffs’ contention that Gogan was not only planning to compete with DCN, but also that he was actively pursuing clients on behalf of his new corporation ACI, while still working for DCN. They also contend that Gogan was taking opportunities from DCN and holding them for his own benefit to utilize the opportunities for ACI. However, after the close of discovery, the plaintiffs still have no evidence of their suspicions.
The plaintiffs’ evidence of a breach of fiduciary duty consists of the fact that Gogan wanted out of DCN, that Gogan’s sales were down for the period right before he incorporated ACI, that he took control of his company cell phone and transferred emails to his home computer, and that ACI is now serving eight of DCN’s past clients. However, as a matter of law, these facts are insufficient to establish a breach of fiduciary duty. Cf. Chelsea Indus., Inc., 389 Mass. at 11 (where defendants breached “their fiduciary duties in the purchase of equipment for a price in excess of its fair market value, in their solicitation of [plaintiffs] customers, in their preparation of a customer list and of an SBA loan application which included the names of prospective customers, most of whom were customers of [plaintiff], and in their agreement to leave the [plaintiff] simultaneously”). In Chelsea, as opposed to here, the defendants not only planned to compete, which alone would have been innocuous, but also while planning to compete, they breached their fiduciary duties in the process. The record in Chelsea was replete with disloyalty, where for example, the defendants used compensated work time, including trips abroad paid by the company to plan their new venture. Here, the plaintiffs cannot produce any evidence that Gogan was disloyal while he was still working for DCN. There is sufficient evidence that Gogan wanted out of DCN, or wanted to buy out Ciccarello and Cox because DCN was not performing well. The fact that Gogan’s sales were down in the period before he incorporated ACI also does not prove a breach of fiduciary duty. The evidence demonstrates that business in general was down for DCN, and although Cox’s and Gogan’s sales were typically about equal, Cox testified that this was not always the case. Both Ciccarello and Cox testified that their company cell phones were their only cell phones and were used for personal calls as well as business. Therefore, the fact that Gogan took his cell phone from the company is not evidence of a breach of fiduciary duty. The fact that Gogan forwarded information from DCN to his personal computer is not enough to establish a breach of fiduciary duty at trial, where Gogan testified this was his custom and there is no evidence that he used such information to the detriment of DCN while he was still employed.
It is also not a breach of fiduciary duty that Gogan’s new corporation is now serving eight of DCN’s former clients, where there is no evidence that Gogan was soliciting clients while still employed by DCN. See Meehan v. Shaughnessy, 404 Mass. 419, 435 (1989) (stating that a fiduciary may plan to compete and acknowledging that clients may leave the former company with the exiting fiduciary). See Chelsea Indus., Inc., 389 Mass. at 12 (stating that an executive employee is barred from actively competing with his corporation during his employment (emphasis added)). Cox even testified at his deposition that he assumed that Gogan would take the customers from the accounts he worked on with him to ACI, and that such was the typical practice in the business. There is no evidence that Gogan discussed his leaving DCN and starting ACI with DCN customers prior to his termination. In fact, Ciccarello and Cox never contacted any DCN customers to inquire into whether Gogan had done so. As the plaintiffs do not have any evidence, besides their mere suspicions, they will be unable to prove their claim for breach of fiduciary duty *522 at trial, and therefore, this court shall grant Gogan’s motion as to this claim.
C. Breach of Fiduciary Duty (Count II)
Gogan alleges that the plaintiffs breached their fiduciary duties by freezing him out of DCN. The determination of whether there has been a breach is for the court to decide as a matter of law. Merola, 423 Mass. at 464. As majority shareholders of a closed corporation, Ciccarello and Cox are required to deal with Gogan with “the utmost good faith and loyally.” Wilkes v. Springside Nursing Home, Inc., 370 Mass. 842, 850 (1976). However, the Supreme Judicial Court has decided that when a minority stockholder, such as Gogan, brings suit against the majority stockholders the court must first analyze whether the majority “can demonstrate a legitimate business purpose for its action.” Id. at 851. The court finds that the plaintiffs have established a legitimate business purpose for their action. Therefore, the burden is upon Gogan to “demonstrate that the same legitimate objective could have been achieved through an alternative course of action less harmful to the minority’s interest.” Id. at 851-52. Gogan has not shown such an alternative course of action. Therefore, this court will deny summary judgment for Gogan on his claim of breach of fiduciary duty.
ORDER
For the foregoing reasons, the defendant’s motion for partial summary judgment is ALLOWED in part, and DENIED in part.