WILLIAM A. C. MILLER, THIRD, executor, *vs.* BOARD OF
ASSESSORS OF WENHAM.

Suffolk.    March 8, 1966. — April 28, 1966.

Present: WILKINS, C.J., SPALDING, CUTTER, & SPIEGEL, JJ.

*Taxation,* Real estate tax: abatement.   *Executor and Administrator,* Real
estate of decedent, Taxes.

One designated as executor in the will of a decedent domiciled in another
State had standing under the first sentence of G. L. c. 59, § 59, before
the allowance of the will in the other State and before its allowance and
the appointment of him, the designated person, as ancillary executor in
Massachusetts, to make an application to the assessors for an abatement
of a tax on Massachusetts real estate of the decedent assessed to her
prior to her death.

APPEAL from a decision of the Appellate Tax Board.

*Lewis L. Wadsworth, Jr.* *(John T. Williams* with him)
for the appellant.

*William B. Trafford* for the appellee.

SPIEGEL, J.   This is an appeal from a decision of the
Appellate Tax Board upholding the denial by the appellee
board of assessors of Wenham (assessors) of an applica-
tion for the abatement of real estate taxes for 1960.   The
case was heard in the Appellate Tax Board on an "Agreed
Statement of Facts."

On January 1, 1960, and at the time of her death on
September 9, 1960, one Ruby Boyer Miller, mother of the
appellant William, was the owner of a parcel of real estate
in Wenham.   As of January 1, 1960, the property was as-
sessed at $331,700.   It is conceded that "[t]he fair cash
value . . . was Two Hundred Sixty Thousand Dollars
($260,000)."   At the time of her death Mrs. Miller was
domiciled in Michigan.   Her sole heir and next of kin was
the appellant.   Mrs. Miller's will, in which the appellant
was named as executor, was filed for probate in Michigan
on September 15, 1960.   The appellant "was not a resident
of Michigan and under the laws of that State, could not

qualify as a fiduciary for a Michigan decedent." A resident of that State, one Rockwell T. Gust, a Michigan attorney, was appointed special administrator. While in Massachusetts during the month of September, the appellant "being named executor as aforesaid, took possession of the real estate" here and "took such other steps as he deemed advisable to preserve Massachusetts assets and provide for payment of the debts and obligations of the estate." On September 30, 1960, "pursuant to instructions" from the appellant, "a check was drawn on the estate funds" for real estate taxes due on the property in question, and William "caused the above-mentioned check to be delivered to the Collector of Taxes for the Town of Wenham." The check was deposited for collection by the town and paid. On September 30, 1960, William "caused an application for Abatement of Real Estate Tax . . . to be filed with the Board of Assessors." On October 24, 1960, Mrs. Miller's will was admitted to probate in Michigan and Mr. Gust was appointed administrator, c.t.a. On November 10, 1960, the appellant "filed in the Probate Court for Essex County, Massachusetts, a petition for the allowance of a foreign will and his appointment as executor thereunder." On December 27, 1960, the will was admitted to probate in Massachusetts, and the appellant was appointed and qualified as ancillary executor on that date, and still serves as such.

The Fiduciary Trust Company of Boston was the trustee of a revocable trust established by Mrs. Miller. Under the provisions of that trust, "From and after the death of the Settlor, and so long as the Settlor's son . . . shall live, the Trustee shall pay and distribute the net annual income of the trust estate . . . one-half to . . . [the appellant]; and one-half to and among a class of beneficiaries consisting of . . . [the appellant], his wife and his issue living . . . in such proportions as the Trustee in its discretion shall each year determine." In addition, Article Sixth of the trust provides in pertinent part as follows: "The Trustee shall pay to the Settlor's estate, upon the written request of the Settlor's executor or administrator: (a) such amount as said executor or administrator may certify to be neces-

sary to pay the just debts of the Settlor . . . . The obligation and discretion of the Trustee to pay to the Settlor's estate any amount as provided in this paragraph shall not be affected by the fact that the Settlor's estate shall have the funds with which to pay in whole or in part the said amount.'' Upon final settlement of the estate in 1964, the trust reimbursed the estate in full for the property tax which had been paid from the funds of the estate.

The assessors maintain that the appellant was without standing to bring an application for abatement. The appellant asserts that he had standing under G. L. c. 59, § 59, which reads in pertinent part as follows: "A person upon whom a tax has been assessed or the administrator of the estate of such a person or the *executor or trustee under the will of such a person,* if aggrieved by such tax, may . . . on or before October first of the year to which the tax relates . . . apply in writing to the assessors, on a form approved by the commissioner, for an abatement thereof, and . . . upon an assessment of any of his property in excess of its fair cash value, they shall make a reasonable abatement. . . . If a person other than the person to whom a tax on real estate is assessed is the *owner* thereof, or has an *interest* therein, or is in *possession* thereof, *and pays the tax,* he may thereafter prosecute in his own name any application, appeal or action provided by law for the abatement or recovery of such tax, which after the payment thereof shall be deemed for the purposes of such application, appeal or action, to have been assessed to the person so paying the same'' (emphasis supplied).

It is the appellant's contention that his later appointment as ancillary executor validated his act in applying for an abatement as an executor designate. The assessors contend that the executor must be appointed prior to the application for abatement. They argue that there is "no method . . . whereby on October 1st of any given year the assessors can distinguish a person who may later become an executor from one who may not,'' and "[i]f haste is required to prevent a loss to the estate, temporary administration may be taken out under G. L. c. 193.''

The statutory provision enabling "the executor or trustee under the will" to apply for an abatement of the tax was enacted after the Appellate Tax Board had recommended "that the words 'testamentary trustee, administrator or executor' be inserted so that a testamentary trustee or an administrator or an executor of an estate may make application for abatement in certain cases without first paying the tax." 1945 House Doc. No. 8, p. 6. The Legislature, however, chose the words "[a] person upon whom a tax has been assessed or the administrator of the estate of such a person or the executor or trustee under the will of such a person." Grammatically, "under the will" modifies both "the executor" and the "trustee." By definition, the "executor" of an estate is "under the will" of the decedent, since he is "a person named in a will to execute its provisions." Bouvier's Law Dictionary, Rawle's Third Rev. It seems to us that it would be redundant to use the phrase "under the will" in the statute with reference to the word "executor," unless the Legislature intended to include persons named as executors but not yet appointed by the court. The appellant was named executor under the will of his mother, and, therefore, we are of opinion that he had standing to apply for the abatement.

Although an executor "under the will" may obtain an abatement of the tax in behalf of the estate, he cannot be reimbursed in the amount of the abatement until he is appointed by the court. General Laws c. 59, § 69, provides for reimbursement solely to "[a] person whose tax has been abated," and an executor designate has no rights to money due the estate. In the instant case, however, the appellant was appointed an ancillary executor, and thus was entitled to receive the amount abated.

In view of our holding, we need not discuss the appellant's requests for rulings. The decision of the Appellate Tax Board is reversed, and an abatement of the 1960 tax is to be granted in the amount of $3,800.10 with interest and costs.

*So ordered.*