RICHARD HEAVEY, administrator,[1] *vs.* DAVID A. MALOOF.

Norfolk. January 9, 2009. - February 20, 2009.

Present: MARSHALL, C.J., IRELAND, SPINA, CORDY, & BOTSFORD, JJ.

*Limitations, Statute of. Executor and Administrator,* Recovery of assets, Trust property. *Trust,* Resulting trust.

In a civil action brought by the administrator with the will annexed of the estate of the defendant's mother, alleging that the defendant had misappropriated funds from the mother's estate, the judge erred in granting summary judgment in favor of the defendant on the ground that the action was barred by the three-year statute of limitations contained in G. L. c. 260, § 2A, where, although the defendant asserted that his sister (another beneficiary) became aware of facts necessary to trigger the statute of limitations over three years before the plaintiff brought suit, G. L. c. 230, § 5 (relating to the ability of an heir, legatee, or creditor to bring an action on behalf of an estate when the executor refuses or is unable to do so), did not operate to impute this knowledge to the plaintiff, who timely initiated the action after his appointment as administrator. [262-264]

In a civil action brought by the administrator with the will annexed of the estate of the defendant's mother, the administrator could not maintain a claim for rents obtained by the defendant from the mother's property after the mother's death, where the administrator did not take control of the rental property after the mother's death. [264-265]

CIVIL ACTION commenced in the Norfolk Division of the Probate and Family Court Department on December 12, 2001.

On transfer to the Superior Court Department, the case was heard by *Elizabeth B. Donovan,* J., on a motion for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Bruce A. Kraft* for the plaintiff.

*Karen Friedman* for the defendant.

SPINA, J. The plaintiff, Richard Heavey, administrator with the will annexed of the estate of Adele H. Maloof, commenced a

---

[1] With the will annexed of the estate of Adele H. Maloof.

civil action against the defendant, David A. Maloof, in which he alleged that the defendant misappropriated funds from his late mother's estate. The defendant filed a motion for summary judgment in which he asserted the action was barred by the three-year statute of limitations, G. L. c. 260, § 2A.[2] In particular, the defendant asserted that his sister Suzanne Ayoub became aware of the facts necessary to trigger the statute of limitations no later than June 18, 1998, while she was present during the deposition of the defendant in a separate action she had filed against him, and that her knowledge must be imputed to the plaintiff. A judge in the Superior Court agreed and granted summary judgment for the defendant. The plaintiff appealed and we transferred the case to this court on our own motion.

1. *Background.* The following facts are not in dispute. The decedent, Adele H. Maloof, and her husband, Edward D. Maloof, had five children: Edward A. Maloof (Edward), Suzanne Ayoub (Suzanne), Marilyn Sullivan (Marilyn), Paul Maloof (Paul), and David Maloof, the defendant. Adele's husband died on May 26, 1991, leaving her the sole owner of their two-family house in Norwood. On July 3, 1991, Adele transferred the house to Suzanne and the defendant, and she had the defendant's name added to various bank accounts.

Adele died July 1, 1992. She had executed a will dated February 26, 1971, in which she left her entire estate (save two small charitable bequests) to her husband, but if he died before her, to her five children in equal shares. She nominated her husband to be executor of her will, but if he predeceased her, she nominated her son Edward to be executor. Approximately one year after Adele's death, the defendant delivered the will to his cousin, Andrew Howard, for safekeeping. Edward requested the will from Howard sometime in June, 1998. Because of internal family difficulties, described below, Howard caused the will to be filed in the Norfolk Division of the Probate and Family Court Department on or about July 23, 1998, approximately six years after Adele's death.[3]

---

[2]General Laws c. 260, § 2A, states: "Except as otherwise provided, actions of tort, actions of contract to recover for personal injuries, and actions of replevin, shall be commenced only within three years next after the cause of action accrues."

[3]General Laws c. 191, § 13, requires a person having custody of a will to

In the meantime, on August 30, 1995, Suzanne agreed to transfer her title to Adele's house to the defendant so he could secure a mortgage loan to address some personal financial difficulties. A disagreement arose over the defendant's control of the house, and Suzanne brought a civil action against the defendant in Superior Court seeking, inter alia, a declaration that the defendant held the house in trust for all five of Adele's children.[4] Paul and Marilyn were added as plaintiffs, but Edward refused to participate in the action. That action ultimately was settled in May, 1999, and the defendant transferred title of the house to Suzanne, Paul, and Marilyn.

In the course of that litigation, on June 18, 1998, the defendant was deposed. During that deposition, which Suzanne attended, the defendant testified that Adele had added his name to "one or two" of her bank accounts, as a convenience to her, so he could pay her bills. These accounts (there were six) contained about $200,000 at the time. After Adele's death the defendant closed the accounts, which he said contained over $100,000. He opened a joint account with his brother Edward at a bank in New Hampshire. The defendant since has withdrawn nearly all the funds, and only about $1,000 remained at the time of her death. The defendant testified that he spent the money for Adele's purposes, but he resisted attempts that he produce documentation to support that assertion.

Suzanne filed a petition to probate Adele's will on July 23, 1998, approximately one month after the defendant's deposition in her Superior Court action. She alleged that Edward was unsuitable to be appointed executor because he and the defendant misappropriated assets of the estate. Internal family conflict resulted in none of the Maloof siblings being appointed fiduciary of the estate, and the plaintiff was appointed administrator with the will annexed on January 14, 1999. He gave bond as required by law. See G. L. c. 193, § 7; G. L. c. 205, § 1 (1).

After investigation, the plaintiff determined that Adele had

---

deliver the will to the appropriate Probate and Family Court within thirty days after notice of the testator's death.

[4]"The heirs of a decedent stand in his shoes as the beneficiaries of a resulting trust [with respect to realty] after his death." *Caron v. Wadas,* 1 Mass. App. Ct. 651, 655 (1974).

$225,203.95 in six bank accounts in her name approximately one year before her death, and that her two-family house generated rental income of $1,200 per month after her death. The plaintiff requested the defendant to provide him with an accounting of money he spent from Adele's bank accounts. The defendant provided the plaintiff with an accounting of $212,865 spent for or on behalf of Adele. After further investigation the plaintiff determined that "many of [the defendant's purported] expenses [were] inflated, untruthful, misleading and false," and that "the rents collected were sufficient to pay all of the outstanding repairs and renovations" to Adele's house.

The plaintiff commenced a civil action against the defendant on December 12, 2001, within three years of his appointment as administrator. He alleged that the defendant's name was added as a joint owner of Adele's six bank accounts, without donative intent, solely as a matter of convenience to assist Adele in paying her bills and managing her finances. The complaint alleged it was Adele's intent that on her death the balance in said accounts would be distributed equally among her children, and that at the time of Adele's death, on July 1, 1992, said accounts contained $225,203.95 in the aggregate. The complaint further alleges that the defendant secretly withdrew the funds from said accounts, which he "held in trust for the benefit of all the Maloof siblings," and wrongfully expended them for his own purposes. A similar allegation is made as to rental income from Adele's house.

2. *Discussion.* The defendant contends the judge correctly ruled that the plaintiff's action is barred by the three-year statute of limitations, G. L. c. 260, § 2A, because Suzanne became aware on June 18, 1998, that he had control over Adele's bank accounts, and her knowledge is imputed to the plaintiff, who did not commence this action until December 12, 2001, approximately three and one-half years after Suzanne gained such knowledge. Relying on *Bennett* v. *United States*, 429 F. Supp. 2d 270, 277 (D. Mass. 2006), he reasons that Suzanne had full authority under G. L. c. 230, § 5,[5] to bring an action on behalf of Adele's estate

---

[5]General Laws c. 230, § 5, states in relevant part:

"It shall be unnecessary to remove an executor or administrator in order that an action to enforce a claim in favor of the estate may be brought by an administrator to be appointed in his place, when he *refuses*

to recover funds allegedly misappropriated by the defendant once Edward, the original executor, refused to bring such a lawsuit.

*Bennett* v. *United States, supra,* was not decided on the basis of Massachusetts law, but under Federal law. The court held that under the terms of the Federal Tort Claims Act (FTCA), a surviving child who was a beneficiary of the estate, along with the executor or administrator of the estate, had "full authority to file the administrative claim" needed to initiate the compensatory process under the FTCA. *Bennett* v. *United States, supra* at 278, quoting *Bennett* v. *FBI,* 278 F. Supp. 2d 104, 114 (D. Mass. 2003). The court held that the beneficiary's knowledge may be imputed to the estate because, under the FTCA, the beneficiary had the same authority as the executor or administrator to prosecute the claim.

The defendant argues that under *Bennett* v. *United States, supra,* Suzanne's knowledge must be imputed to the estate because she could have prosecuted the instant claim against him under authority of G. L. c. 230, § 5, after Edward, the executor named in Adele's will, refused to bring such a claim. We do not agree. Edward was not the executor of the estate for purposes of G. L. c. 230, § 5. The word "executor," as it appears in that statute, refers to a fiduciary who has been appointed by a court, not someone who merely has been named executor in a will. Where the statute speaks of no necessity to "remove" an executor, it is referring to one who has been placed in a position of authority by a court, not a testator. It is the former who is "removed," not the latter, who has been "named" executor in a will. A named executor is not "removed" from a will. Rather, if he is appointed executor by a court, he then may be "removed" from his office. If the Legislature meant an "executor" to be an unappointed "executor under the will," it would have so indicated. See *Miller* v. *Assessors of Wenham,* 350 Mass. 629, 632 (1966) (statute authorizing "executor . . . under the will" to apply for abatement of real estate taxes refers to executor named in will and not

> to bring such action at the request of an heir, legatee or creditor, or is *unable* to do so by reason of his interest or otherwise, but an heir, legatee or creditor having an interest in the enforcement of any such claim may bring a civil action to enforce it for the benefit of the estate . . ." (emphasis added).

yet appointed). The context in which the word "executor" is used in G. L. c. 230, § 5, imbues the word with the official status of being court appointed.

Moreover, there is nothing in the record to suggest that the plaintiff, as administrator, either refused or was unable to bring suit against the defendant, so as to trigger authority for Suzanne to bring suit against the defendant pursuant to G. L. c. 230, § 5. Suzanne had no authority to sue the defendant except as provided by § 5. See *Stuck* v. *Schumm*, 290 Mass. 159, 163-164 (1935). Because there was no refusal or inability on the part of the plaintiff to bring suit, Suzanne had no authority to sue.

Unlike the heir in *Bennett* v. *United States*, *supra*, Suzanne was not on an equal footing with the plaintiff to bring suit. The property in question was personalty. As such, title to those assets vested in her administrator, the plaintiff, on his appointment, and related back to the date of Adele's death. *Reardon* v. *Whalen*, 306 Mass. 579, 581 (1940). Thereafter, only the plaintiff could have prosecuted an action to recover Adele's personal property, *Flynn* v. *Flynn*, 183 Mass. 365, 366 (1903), unless he refused or was unable to proceed, in which case an heir or devisee could have proceeded pursuant to G. L. c. 230, § 5. For reasons previously stated, that statute has no application here, and Suzanne had no right to bring suit against the defendant. *Bennett* v. *United States*, *supra*, has no application to the circumstances of this case.

The plaintiff initiated the present action within the three-year statute of limitations. Whatever knowledge he acquired, it was not before his appointment as administrator, on January 14, 1999. The plaintiff had no duty to search for assets before his appointment, even if he had been named executor in the will.[6] See *Williams* v. *Howard*, 330 Mass. 323, 325 (1953). There is no basis to impute Suzanne's knowledge to the plaintiff. Thus, suit was timely commenced on December 12, 2001.

Finally, we address a related problem. The plaintiff has alleged a cause of action against the defendant for breach of a resulting trust as to rents collected before Adele's death and for

---

[6]One who assumes to act for an estate and subsequently obtains letters of administration will be held to account for all his acts in settlement of the estate from the time of the death. See *Hatch* v. *Proctor*, 102 Mass. 351, 354 (1869); *Alvord* v. *Marsh*, 12 Allen 603, 604 (1866).

the proceeds of her bank accounts that he held jointly with her. This is a recognized cause of action. See *Corkum* v. *Salvation Army of Mass., Inc.*, 340 Mass. 165, 167-168 (1959); *Dorfman* v. *Lally*, 12 Mass. App. Ct. 952, 953 (1981); *Caron* v. *Wadas*, 1 Mass. App. Ct. 651, 656 (1974). However, he also has brought suit for rents obtained by the defendant *after* Adele's death. Where the plaintiff did not take control of Adele's house after her death, he has no right to rents accruing after her death. "Such rents belong to the heirs or devisees of the real estate as an incident of the reversion." *Beardsley* v. *Hall*, 291 Mass. 411, 414 (1935).[7] Cf. G. L. c. 206, § 8 ("If real estate of a deceased person is used, occupied or taken charge of by an executor or administrator, he shall account for the income and management thereof in the same manner as in the case of personal property").

For the foregoing reasons, the judgment is reversed and the matter is remanded for trial, except as to the issue of rents accruing after Adele's death.

*So ordered.*

---

[7]Title to real estate passes to heirs at law on death of an owner, subject to rights of creditors and orders of the Probate and Family Court. *Shrewsbury* v. *Murphy*, 333 Mass. 290, 292 (1955).