SUPERIOR COURT 
 
 SZAWLOWSKI POTATO FARMS, INC., AND OTHERS [1] v. JOSEPH E. SZAWLOWSKI, AS THE SPECIAL PERSONAL REPRESENTATIVE OF THE ESTATE OF STANLEY E. SZAWLOWSKI, AND AS TRUSTEE OF THE STAN AND MARY ELLEN SZAWLOWSKI FAMILY TRUST

 
 Docket:
 2180CV00021
 
 
 Dates:
 March 28, 2023
 
 
 Present:
 Kenneth W. Salinger Justice of the Superior Court
 
 
 County:
 HAMPSHIRE, ss.
 

 
 Keywords:
 DECISION AND ORDER ON MOTIONS TO DISMISS THE TRUSTEE’S COUNTERCLAIMS AND THIRD-PARTY CLAIMS
 
 

             Frank, Chester, John, and Stanley Szawlowski were brothers. For decades they owned and ran a potato farming business that their grandparents had started. The business now operates through four closely-held corporations and a limited liability company. John died in early 2016, leaving his three surviving brothers as the owners. Stanley died in 2020. The Stan and Mary Ellen Szawlowski Family Trust (the “Trust”) holds interests that previously belonged to Stanley. His son, Joseph E. Szawlowski, is the Trustee. This lawsuit by the Szawlowski Companies, Frank, and Chester against the Trust and Stanley’s estate is one of four pending actions about these family businesses.[2]
            The Trustee asserted and then amended various counterclaims against all seven plaintiffs, as well as third-party claims against Shelley Szawlowski, Melanie Wickles, and Diane Szawlowski (Frank’s daughters) and Pamela Szawlowski (Chester’s daughter).
            The Court will deny in part the motion by the Szawlowski Companies, Frank, and Chester to dismiss the Trustee’s counterclaims with respect the validity of certain amendments to a 2009 shareholder stock redemption agreement. There is an actual controversy as to the validity of amendment provisions that
 
-------------------------------------
 
[1] C&F Farms, Inc.; Szawlowski Realty, Inc.; J&S Farms, Inc.; Szawlowski Packers LLC; Frank R. Szawlowski; and Chester S. Szawlowski.
 
[2] Civil actions 1980CV00132 and 1980CV00156 are pending in the Hampshire Superior Court. In civil action 2180CV00137, the Trustee has filed a notice of appeal from the judgment dismissing his claims against the attorneys who have represented the Szawlowski Companies or Frank and Chester. All four actions were specially assigned to this judge on August 25, 2022.
 
                                                            -1-
 
changed how a brother’s ownership interests would be valued if he died and the companies then repurchased those interests. The Court will treat this part of the amended counterclaims as seeking declaratory relief. It finds that, under the plain language of the original contract, these parts of the 2018 amendment are not valid. The Court will order that a declaratory judgment stating that these parts of the amendments are invalid shall enter in favor of the Trust at the end of this litigation.
            The Court will nonetheless allow in part the rest of the motion to dismiss the counterclaims because the facts alleged by the Trustee in his amended pleading do not plausibly suggest that the Trust is entitled to obtain any relief on those claims.[3] As explained below:
o The Trustee’s other counterclaims for breach of contract fail because the facts alleged do not suggest that the Trust suffered any damages as a result of the failed attempt to change the contractual valuation provisions, or that the defendants-in-counterclaim breached the shareholder stock redemption agreement by not paying the Trust for Stanley’s shares (because the Trust has refused to accept a $4 million offer, even though it waived its contractual right to seek a higher payment through an appraisal) or by not continuing to distribute profits or other payments (because the shareholders and LLC members have no contractual right to such payments).
o The assertion that the Szawlowski Companies breached a fiduciary duty by not making distributions to the Trust does not state a viable claim because corporations and limited liability companies do not owe any fiduciary duty to their shareholders or members.
o The apparent fiduciary duty counterclaim against Frank and Chester must be dismissed without prejudice because the same claim is pending in a prior action.
o The Trustee’s counterclaims regarding the 44 Christian Lane property must be dismissed because the facts alleged do not
 
-------------------------------------
 
[3] To survive a motion to dismiss under Mass. R. Civ. P. 12(b)(6), a complaint  must allege facts that, if true, would “plausibly suggest[] … an entitlement to relief.” Lopez v. Commonwealth, 463 Mass. 696, 701 (2012), quoting Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008), and Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007).
 
                                                            -2-
 
plausibly suggest that the Trust may enforce a resulting trust in the property, may recover on a theory of quantum meruit or constructive trust, is entitled to any relief under G.L. c. 93A, or has standing to assert claims on behalf of the occupants of the property.
Finally, the Court will allow the motion by Shelley, Melanie, Diane, and Pam to dismiss the Trustee’s third-party claims against them. As explained below:
o The claim for intentional interference with contractual relations fails because the facts alleged do not plausibly suggest that the third- party defendants induced anyone else to breach a contract.
o The claim for breach of fiduciary duty fails because the facts alleged do not plausibly suggest that any of the third-party defendants owe or owed a fiduciary duty to Stanley or to the Trust.
o Finally, the facts alleged by the Trustee do not plausibly suggest that the Trust is entitled to relief against any of the third-party defendants for conspiring with Frank and Chester to breach the fiduciary duties that Frank and Chester owed to Stanley and the Trust, or for aiding and abetting Frank’s and Chester’s alleged breach of those fiduciary duties.
When final judgment enters in this case, the dismissal of the breach of fiduciary duty claims against Frank and Chester under Mass. R. Civ. P. 12(b)(9) shall be without prejudice. The dismissal of the remaining counterclaims other than the implicit request for declaratory relief and of the third-party claims under Rule 12(b)(6) shall be with prejudice.[4]
            The Court’s decision on these motions to dismiss resolves many of the key issues that divide the parties in this and the three related civil actions. This may be an appropriate time for the parties to retain and work with a neutral mediator to explore the possibility of a global settlement of their disputes. The Court will order the parties to report by the end of April whether they are willing to do so.
 
-------------------------------------
 
[4] See Mestek, Inc. v. United Pacific Ins. Co., 40 Mass. App. Ct. 729, 731, rev. denied, 423 Mass. 1108 (1996) (dismissal under Rule 12(b)(6) “operates as a dismissal on the merits … with res judicata effect”) (quoting Isaac v. Schwartz, 706 F.2d 15, 17 (1st Cir. 1983)).
 
                                                            -3-
 
            1. Procedural Background. The pending motions to dismiss had been filed against the Trustee’s original counterclaims and third-party claims. After those motions were fully briefed and argued, the Trustee filed amended counterclaims and third-party claims as of right. During a status conference on February 8, 2023, all parties agreed that the Court should treat the motions to dismiss as applying to the Trustee’s amended pleading.
            When the Trustee filed his amended answer, counterclaims, and third-party complaint, he submitted a document that he styled as a “Written Submission in Support of its Oral Motion to Amend.” The Trustee’s assertion that he made an oral motion to amend his counterclaims or third-party claims during the hearing on January 12, 2023, is incorrect.5 In any case, the Trustee did not need leave to file this amendment, and thus no motion for leave to amend the counterclaims or third-party claims was required. A party may amend a pleading as of right so long as no responsive pleading has been served and the party’s claims, counterclaims, or third-party claims have not been dismissed. See Mass. R. Civ. P. 15(a). Since no answer to the counterclaims or third-party claims has been filed, the Trustee was entitled to amend his pleading in this action once as of right. The Court will therefore deny the Trustee’s motion to amend on the ground that it is moot.
            2. Counterclaims against the Szawlowski Companies, Frank, and Chester.
            2.1. Breach of Contract Claims. The Trustee claims that the five Szawlowski Companies, Frank, and Chester have all breached the express terms of, and the covenant of good faith and fair dealing that is implied in, a 2009 contract.
            2.1.1. Construing the Governing Contracts. To understand these claims, one must understand the terms of the 2009 contract, a related 2016 “Equity Agreement,” and a 2018 document that tried to incorporate the 2016 agreement into the 2009 contract. The Court may consider these documents in deciding
 
-------------------------------------
 
[5] This is the second time that the Trustee has contended in a filing that he previously made an oral motion to amend, when that never happened. See the Court’s “Decision and Order on Plaintiff’s Motion for Leave to Seek to Amend Complaint and the Saul Ewing Defendant’s Motion for Attorneys’ Fees,” civil action no. 2180CV00137, at 2 n.3 (Jan. 30, 2023). It is troubling that the Trustee keeps misrepresenting what happened at prior hearings.
 
                                                            -4-
 
the motion to dismiss because the Trustee referred to them in his amended pleading and relied upon them in framing his counterclaims.[6]
            2.1.1.1. Legal Background—Contract Interpretation. The relevant contract provisions are unambiguous, so their meaning is a question of law that the Court may decide on a Rule 12(b)(6) motion to dismiss.[7] Whether language used in a contract “is ambiguous is also a question of law for the court.”[8] Though the contracts may be a bit convoluted, that does not make them ambiguous.[9] And the fact that the parties disagree about how to read the contracts does not make them ambiguous either.[10]
            As with any contract concerning a business venture, the Court must construe the contracts at issue here in a manner that will give them “effect as a rational business instrument and … carry out the intent of the parties.”[11] “[T]he parties’ intent ‘must be gathered from a fair construction of the contract as a whole and
 
-------------------------------------
 
[6] See Lanier v. President and Fellows of Harvard College, 490 Mass. 37, 44 (2022) (documents referenced in complaint); Marram v. Kobrick Offshore Fund, Ltd., 442 Mass. 43, 45 n.4 (2004) (document relied upon in framing complaint).
 
[7] See Eigerman v. Putnam Investments, Inc., 450 Mass. 281, 287 (2007) (affirming dismissal of complaint for failure to state a viable claim for breach of contract); accord Flomenbaum v. Commonwealth, 451 Mass. 740, 751-752 & n.12 (2008) (granting motion to dismiss because plain language of contract made clear that Commonwealth could terminate chief medical examiner before completion of five-year term).
 
[8] Berkowitz v. President & Fellows of Harvard College, 58 Mass. App. Ct. 262, 270, rev. denied, 440 Mass. 1101 (2003) (ordering dismissal of complaint for failure to state a viable claim for breach of contract).
 
[9] See Sullivan v. Southland Life Ins. Co., 67 Mass. App. Ct. 439, 443 (2006) (when interpreting a written contract, “difficulty in comprehension does not equate with ambiguity”) (quoting Massachusetts Prop. Ins. Underwriting Ass'n v. Wynn, 60 Mass. App. Ct. 824, 827 (2004)).
 
[10] See Indus Partners, LLC v. Intelligroup, Inc., 77 Mass. App. Ct. 793, 795 (2010) (“ambiguity is not created simply because a controversy exists between parties, each favoring an interpretation contrary to the other’s”) (quoting Jefferson Ins. Co. v. Holyoke, 23 Mass. App. Ct. 472, 475 (1987)).
 
            [11] Robert and Ardis James Foundation v. Meyers, 474 Mass. 181, 188 (2016), quoting
            Starr v. Fordham, 420 Mass. 178, 192 (1995).
 
                                                            -5-
 
not by special emphasis upon any one part.’ ”[12] Thus, the Court may not consider any particular provision in isolation, but instead must construe every provision in light of the entire contract.[13]
            2.1.1.2. The 2009 SSRA. Frank, Chester, John, and Stanley were equal owners of the Szawlowski Companies. In March 2009, they entered into a shareholder stock redemption agreement (the “2009 SSRA”) that, among other things, restricted the transfer of shares in the four Szawlowksi corporations, addressed what would happen upon the death of any shareholder, and established a method for valuing shareholder interests.
            All five of the Szawlowski Companies are now parties to the 2009 SSRA. The four family corporate entities (Szawlowski Realty, C&F Farms, J&S Farms, and Szawlowski Potato Farms) were parties to the original contract, along with the four brothers. Just before John died, in February 2016, the brothers amended this contract to make Szawlowski Packers LLC a party.
            The first section of the 2009 SSRA restricts “transfers of interests” in any of the Szawlowski Companies. It provides that no shareholder or member may assign, transfer, pledge, or grant a security interest in any of their shares or membership interests without prior written unanimous approval of the other shareholders or members that were parties to the 2009 SSRA—and that such approval “may be withheld or denied for any reason or for no reason.” The agreement made an exception for family trusts, providing that a shareholder could transfer their equitable interest—but not their voting rights—to a trust for the benefit of their spouse or children.
            The second section of the 2009 SSRA addresses “dissolution, liquidation and termination” of the companies. It provides in part that each company would be dissolved upon the death of one of its shareholders—or upon a determination that any shareholder is insane, or the retirement, resignation, withdrawal, dissolution, or bankruptcy of any shareholder—unless the remaining shareholders decided to continue the corporation.
 
-------------------------------------
 
[12] Kingstown Corp. v. Black Cat Cranberry Corp., 65 Mass. App. Ct. 154, 158 (2005), quoting Ucello v. Cosentino, 354 Mass. 48, 51 (1968), and Crimmins & Peirce Co. v. Kidder Peabody Acceptance Corp., 282 Mass. 367, 375 (1933).
 
[13] General Convention of the New Jerusalem in the United States of Am., Inc. v. MacKenzie, 449 Mass. 832, 835 (2007) (“The words of a contract must be considered in the context of the entire contract rather than in isolation.”).
 
                                                            -6-
 
In the event of a shareholder’s death, the company would have the option to buy all or any part of the interest belonging to the deceased shareholder, and the shareholder’s estate would have the right to require the company to repurchase the shareholder’s entire interest, subject to the following terms.
o If one of the companies wishes to exercise its option to purchase part of all of the shares that had been owned by a deceased shareholder, the company must exercise the option within 90 days, state the proposed price and terms for the repurchase, and set a date for the closing of the purchase. (See ¶ 4(a) of this section of the 2009 SSRA.)
o The purchase price is to equal a proportionate share, based on the shareholder’s interest, of the fair market value of the assets of the company as of the date the shareholder died. This fair market value is defined to include the value of all real and personal assets of the company, but to exclude the value of any “good will” that belongs to the company. (See ¶ 4(b)[14].)
o If the deceased shareholder’s estate or surviving family trust believes that the proposed purchase price is unfair, then the estate has the right to have the purchase price set by an independent appraisal, subject to the condition that the estate or trust exercise its appraisal right within 30 days after the company gives notice of its exercise of the option to repurchase. The appraisers would then determine the fair market value of the interest of the terminating shareholder, and that determination would “be final and binding upon the parties.” (See ¶ 4(d)). When read in light of paragraph 4(b), it is clear that this provision meant that any independent appraisal would determine the value of a shareholder’s interest as an
 
-------------------------------------
 
[14] Read literally and in isolation, ¶ 4(b) says that the purchase price for the shares of a deceased shareholder shall equal the entire “fair market value of the assets of the corporation,” without taking into account that each shareholder owned only part of the company. But ¶ 4(d) specifies that any independent appraisal would “determine the fair market value of the interest of the Terminating Shareholder.” Reading these provisions together, and construing the SSRA as a rational business agreement, it is apparent that the parties intended that the ownership interest of a deceased shareholder be valued, as of the date of death, in an amount equal to the shareholder’s proportionate interest in the fair market value of each company’s assets.
 
                                                            -7-
 
appropriate percentage of the fair market value of all the company’s assets excluding good will.
o If a company does not exercise its option to purchase ownership interests that had belonged to a deceased shareholder, the estate or surviving trust has the right to require the company to repurchase the shares, subject to the condition that the estate must exercise that right within 90 days after the shareholder’s death. If the company disagrees with the estate’s proposed purchase price, it would have the right to have  the  price  set  by  an  independent  appraisal.  (See ¶ 4(f)).
The third section of the 2009 SSRA includes various “general provisions.” One of those provisions states that the agreement may be amended or modified at any time in a “written instrument signed by a majority of the shareholders who are parties to this agreement and by shareholders holding a majority of the shareholdership interests.”
            This provision includes a list of exceptions, however, specifying some terms that may only be amended by unanimous consent, and other possible changes affecting an individual shareholder that may only be made with that shareholder’s consent. One exception states that an amendment that “chang[es] adversely the rights of a shareholder with respect to distributions, allocations or voting … shall be effective only with that shareholder’s consent.”
            2.1.1.3. The 2016 Equity Agreement. On February 23, 2016, just days before John died, the four brothers entered into a written agreement as to the total value of the assets of the Szawlowski Companies, which they called an “Equity Agreement.” This agreement was executed at the same time that the brothers amended the 2009 SSRA to make Szawlowski Packers LLC a party to that contract.
            In the 2016 Equity Agreement, Frank, Chester, John, and Stanley agreed that the combined value of all assets belonging to the five companies, including good will, was $16 million as of that date, and that if any brother were to die then the combined value of his interest in all the companies would be $4 million as of that date.
            The brothers stated their intention that this determination of value be binding, with the “hope and expectation that this agreement between the four of us would eliminate the need for disagreement or dispute” in the future.
 
                                                            -8-
 
            But the plain language of the contract makes clear that this valuation was actually not binding. One provision states that this joint valuation as of February 2016 did not limit or change any rights under the 2009 SSRA to challenge valuation of a deceased brother’s ownership interest. The 2016 Equity Agreement did not amend the 2009 SSRA, did not alter the requirement that the purchase price of a deceased brother’s ownership share must equal fair market value of the brother’s share of total company assets (excluding good will), and did not limit the contractual right of a deceased brother’s estate to request an independent appraisal of fair market value. In sum, the 2016 Equity Agreement does not bind the Trust or Stanley’s estate.[15]
            2.1.1.4. The 2018 SSRA Amendment. In November 2018, Frank and Chester executed an amendment to the 2009 SSRA. The key provisions of this 2018 SSRA Amendment are as follows.
            Paragraph 1 of the amendment revised the “transfers of interest” section of the 2009 SSRA by adding a provision that allows transfers “to the shareholder’s spouse or issue of any generation” or to another shareholder, either during the shareholder’s life or upon their death.
Paragraphs 2 through 7 of the amendment revised the “dissolution, liquidation and termination” section of the 2009 SSRA in several ways.
            First, in addition to the various circumstances (including death) that previously were deemed to constitute the withdrawal of a shareholder from the Szawlowski Companies, the amendment provided in ¶ 2 that a shareholder would also be deemed to have withdrawn upon “the termination of all of a shareholder’s services (as an employee, independent contractor, LLC manager and a member of a Board of Directors) to all of the Corporations arising from any action other than resignation or retirement.” This change meant that if majority shareholders chose to terminate any shareholder’s active participation in running the company, that would trigger each company’s right to repurchase the shares owned by the terminated shareholder.[16]
 
-------------------------------------
 
[15] The Court agrees with the Trustee that whether John was competent and had the legal capacity to enter into the 2016 Equity Agreement need not be resolved, given the Court’s conclusion that as a matter of law this 2016 document does not bind the Trust in any way.
 
[16] The Court does not need to determine whether this provision of the 2018 SSRA Amendment is valid, as there is no allegation that Frank and Chester ever sought to terminate Stanley’s ownership interests by exercising the powers purportedly granted to them by this provision.
 
                                                            -9-
 
Second, ¶ 4(a) of this section of the 2009 SSRA, concerning the company’s option to repurchase shares for example upon death of a shareholder, was revised in ¶ 3 of the 2018 SSRA Amendment to state that the company “shall have the option to purchase all (but not less than all)” of those shares. It was also revised to make clear that the reference to a “Terminating Shareholder” includes any representative, successor, or heirs who received their shares from a Terminating Shareholder through a “Permitted Family Transfer.”
            Third, the 2018 SSRA Amendment materially changed the valuation provisions that would apply if the Szawlowski Companies exercise a right to repurchase a shareholder’s ownership interests, including upon the shareholder’s death.
o Paragraph 4(b) of this section of the 2009 SSRA, which previously said that the purchase price would be based on the fair market value of the assets of the company as of the date the shareholder died, was revised in ¶ 4 of the 2018 SSRA Amendment to say that the purchase price would now be based on the $16 million agreed value of the Szawlowski Companies that was set forth in the 2016 Equity Agreement. All discussion of the value of the companies’ assets was deleted.
o In addition, the amendment incorporated the 2016 Equity Agreement into ¶ 4(b) by reference.
o Paragraph 4(d), which previously gave a deceased shareholder’s estate the right to seek an independent appraisal of the fair market value of all the company’s assets excluding good will, was revised in ¶ 5 of the 2108 SSRA Amendment to give a right to an independent appraisal of “fair market value of the Terminating Shareholder’s interest,” without explaining what that meant. Since the amendment deleted the language in ¶ 4(b) that had pegged the repurchase price to the fair market value of the company’s assets, the revised ¶ 4(d) appears to permit an appraisal of the actual fair market value of the shareholder’s ownership interest, rather than of an appropriate percentage of the fair market value of all the company’s assets excluding good will. It is unclear whether that is what Frank and
 
                                                            -10-
 
            Chester intended, but that appears to be what ¶ 5 of the 2018 SSRA Amendment says.
The amendment also rewrote ¶ 4(f) of this section of the 2009 SSRA. However, in January 2019 Frank and Chester rescinded and deleted ¶ 6 of the 2018 SSRA Amendment; that had the effect of restoring the original ¶ 4(f).[17]
            Paragraph 8 of the 2018 SSRA Amendment reiterates that Szawlowski Packers LLC is a party to the 2009 SSRA. And it states that references in the 2009 SSRA to the Corporations include the LLC, and references to shares, stock, and similar terms include membership interests in the LLC.
            The 2018 SSRA Amendment also contains a severability clause in ¶ 9. It says that each provision of the amendment is severable, and that if any provision of the amendment is found to be invalid, that shall not impair or affect other parts that are valid.
            2.1.2. Other Facts Alleged in the Amended Counterclaims. In addition to the documents discussed above, the Trustee alleges the following facts and refers in his amended counterclaims to the following documents that are relevant to the Court’s analysis of the Trustee’s claims for breach of contract.
            2.1.2.1. Other Events Relevant to the 2018 SSRA Amendment. In November 2018, when Frank and Chester executed the 2018 SSRA Amendment, they also executed written consents in their capacities as shareholders or members of each of the Szawlowski Companies that (i) elected Frank, Chester, Shelley,
 
-------------------------------------
 
[17] The Court may consider this January 2019 action of shareholders by written consent because it revises and thus is part of the 2018 SSRA Amendment that the Trustee refers to in his counterclaims, and because the Trustee does not dispute the authenticity of this document. See Lanier, 490 Mass. at 44 (may consider uncontested documents referenced in pleading); City of Miami Fire Fighters’ and Police Officers’ Retirement Trust v. CVS Health Corp., 46 F.4th 22, 26 (1st Cir. 2022) (may consider documents whose authenticity is not disputed, even if not referenced in and thus falling outside the complaint). Although the First Circuit precedent summarized in City of Miami Retirement Trust applied the federal rules of civil procedure, judicial construction of these federal rules also applies to parallel Massachusetts rules, “absent compelling reasons to the contrary or significant differences in content.” Smaland Beach Ass’n, Inc. v. Genova, 461 Mass. 214, 228 (2012), quoting Strom v. American Honda Motor Co., 423 Mass. 330, 335 (1996), and Rollins Envtl. Servs., Inc., v. Superior Court, 368 Mass. 174, 180 (1975).
 
                                                            -11-
 
Pam, and Melanie to be directors of each corporation and managers of the LLC, and (ii) accepted the 2018 SSRA Amendment. Stanley objected to the 2018 SSRA Amendment in writing a few weeks later.
            Joseph E. Szawlowski used to work for C&F Farms, but his employment was terminated on February 11, 2019.
            In January 2020, at a special meeting of the shareholders, Frank and Chester voted to ratify the 2018 SSRA Amendment and the other actions that they had taken in November 2018 by written consents.
            2.1.2.2. Stanley’s Death and the Attempt to Repurchase His Shares. Stanley Szawlowski died on March 4, 2020.
            Eighteen days later, on March 22, the companies exercised their right to repurchase Stanley’s ownership shares and interests in each of the Szawlowski Companies. The companies said in their letter that they were acting pursuant to the 2009 SSRA, the 2016 Equity Agreement, and the 2018 SSRA Amendment. The companies offered to waive the companies’ right to recoup any amounts that Stanley owed to them, and to repurchase Stanley’s shares and interests for a lump-sum payment of $4 million. The notice did not set a date for closing the repurchase. Instead, the notice reminded the Trustee that under the 2009 SSRA he had 30 days to inform the companies whether the Trustee wanted to accept the $4 million payment or, alternatively, seek an independent appraisal by qualified appraisers.
            Even though the companies had already exercised their right to repurchase Stanley’s shares, on June 1, 2022, the Trust sent a written demand that the companies repurchase Stanley’s shares in an amount based on the fair market value of the companies. This letter states that the Trustee planned to send a separate response to the companies’ March 22 Notice of Repurchase. The June 1 letter did not give notice that the Trust was exercising its contractual right to an independent appraisal of fair market value.
            Several weeks later, on June 17, 2020, the Trustee responded in writing to the Szawlowski Companies’ March 22 Notice of Repurchase. This letter said that “the Trust rejects the proposal set forth in the Notice as it grossly undervalues the value of the shares and membership interests owned by the Trust.” However, once again the Trustee did not give notice that the Trust was exercising its contractual right to an independent appraisal of fair market value.
 
                                                            -12-
 
Instead, the Trustee offered to sell Stanley’s ownership shares and membership interests in the Szawlowski Companies in exchange for the following:
            o a lump-sum payment of $5,333,333.33;
o payment of one-third of any benefits paid on life insurance policies that the companies “owned with respect to Stanley;”
            o one-third of the marketable securities held or formerly held by Szawlowski Realty;
            o title to the house and property at 44 Christian Lane, Whately, Massachusetts;
            o global releases of all claims and dismissal of the two pending civil actions;
o an agreement that the Szawlowski Companies, Frank, and Chester would not oppose Joseph Szawlowski’s petition to be named the representative of Stanley’s estate; and
o an agreement that the Szawlowski Companies, Frank, and Chester would stop using unspecified property owned by the Trust.
The Trustee alleges in ¶ 238 of the amended counterclaims that “[a]ppraisal rights under Paragraph 4(d)” of the second section of the 2009 SSRA “have never been triggered.”
            2.1.3. Claim as to Validity of the 2018 SSRA Amendment. The Trustee alleges in paragraphs 180 and 184 of his amended counterclaims that the 2018 SSRA Amendment is invalid. The Court will construe this portion of the counterclaims as seeking a declaratory judgment as to whether that amendment was valid.18 There is an actual controversy over whether paragraphs 4 and 5 of the amendment—which rewrote ¶¶ 4(b) and 4(d) of the “dissolution, liquidation and termination” section of the 2009 SSRA—can
 
-------------------------------------
 
[18] Cf. Mass. R. Civ. P. 8(f) (“All pleadings shall be construed as to do substantial justice.”). The prayer for relief asks for “[w]hatever other relief the Court deems just and proper.” It does not matter whether the Trustee labelled any part of his contract claims as seeking declaratory judgment. What matters is whether the facts alleged state a claim for declaratory judgment, not whether the amended counterclaims use that phrase. See generally Gallant v. City of Worcester, 383 Mass. 707, 709 (1981).
 
                                                            -13-
 
lawfully be applied to Stanley’s ownership interests, and the Trustee has standing to raise this claim.
            Whether application of these parts of the 2018 SSRA Amendment to Stanley’s ownership interests is barred by the plain language of the 2009 SSRA is a question of law for the Court to decide, and does not require the presentation of any evidence or any fact finding. Since the Court is persuaded that these two paragraphs are invalid as a matter of law as applied to Stanley’s ownership interests, the appropriate disposition is to deny the motion to dismiss this part of the counterclaims and to declare the rights of the parties. See Massachusetts Fed’n of Teachers, AFT, AFL-CIO v. Board of Educ., 436 Mass. 763, 770 n.10 & 783 (2002) (affirming declaration of rights entered on denial of motion to dismiss, on controversy raising pure question of law with no factual issues).
            Paragraphs 4 and 5 of the 2018 SSRA Amendment are invalid as applied to Stanley’s ownership interests, because they adversely affected Stanley’s rights with respect to future distributions or allocations by the companies without his consent. As discussed above, paragraph 4 eliminated Stanley’s right, if the companies opted to repurchase his shares after his death, for his estate or surviving trust to be paid based on a proportional allocation of the fair market value of the companies’ assets at the time of his death, and replaced it with a right to obtain a share of a fixed sum. Paragraph 5 similarly eliminated Stanley’s right for his estate or surviving trust to have that proportional share of the fair market value of the companies’ assets decided by independent appraisers, and replaced it with a right to have independent appraisers determine the fair market value of Stanley’s ownership interests.
            The defendants-in-counterclaim argue that price at which the Szawlowski Companies may repurchase Stanley’s interests after his death is not a “distribution” within the meaning of ¶ 5(a) on page 14 of the 2009 SSRA. They contend that “distributions” must mean something different than other “payments,” because ¶ 1 on page 12 distinguishes between the two terms by stating that the companies may deduct any amounts owed to them by a shareholder if the companies are “obligate to make a distribution or payment” to that shareholder. The Court is not convinced.
            The parties to the 2009 SSRA did not define what they meant by “distribution,” “payment,” or “allocation.” And it does not appear that they were intending to use those terms with particular precision. The Court concludes that the contractually-mandated price to repurchase the ownership interests of a
 
                                                            -14-
 
deceased shareholder is the sort of “allocation” and “distribution” right that is contractually protected by ¶ 5(a) on page 14 of the 2009 SSRA. Each brother contracted for the right to have a proportionate share of the fair market value of the companies’ assets allocated to their ownership interests, and distributed to their estate or surviving trust by way of the price the companies must pay to repurchase those interests.
            In construing the 2009 SSRA in a manner that makes rational business sense, see Robert and Ardis James Foundation, 474 Mass. at 188, the Court must be “guided by ‘justice, common sense, and the probable intent of the parties.’ ” Robbins v. Krock, 73 Mass. App. Ct. 134, 139 (2008), quoting Fried v. Fried, 5 Mass. App. Ct. 660, 664 (1977); accord, e.g., Krapf v. Krapf, 439 Mass. 97, 105 (2003); City of Haverhill v. George Brox, Inc., 47 Mass. App. Ct. 717, 720 (1999).
            The interpretation advocated by Frank, Chester, and the Szawlowski Companies would not be just, defies common sense, and seems inconsistent with the brothers’ probable intent when they entered into the 2009 SSRA. If the defendants-in-counterclaim were correct, then a majority of the brothers could have amended this contract at any time to provide that upon the death of a shareholder the companies could repurchase their ownership interests for nominal consideration, and thereby deprive a dissenting minority shareholder of his contractual right to preserve the value of his ownership interests— measured by agreement based on the fair market value of the companies’ assets other than good will—for his estate or surviving trust. It would not have made rational business sense for any brother to enter into a contract that did nothing to protect the value of their ownership interests upon their death.
            2.1.4. Damages Claim for Amending the 2009 SSRA. Though part of the 2018 SSRA Amendment is invalid as applied to Stanley’s ownership interests, as discussed above, it does not follow that the Trust is entitled to seek compensatory damages as a result. To state a colorable claim for breach of contract, the Trustee must allege facts plausibly suggesting both a breach of a valid and enforceable contract, and also that the Trustee “sustained damages” as a result. See 477 Harrison Ave., LLC v. JACE Boston, LLC, 483 Mass. 514, 523 (2019). The Trustee’s allegations do not plausibly suggest that he can prove either of these elements of this part of his contract counterclaim. The failed attempt to amend ¶¶ 4(d) and 4(f) of the second section of the 2009 SSRA was ineffective, but not a breach of contract. In any case, the facts alleged in the
 
                                                            -15-
 
counterclaims do not plausibly suggest that Stanley or the Trust suffered any harm or injury as a result of the attempted 2018 amendment of the 2009 SSRA.
            2.1.5. Claim for Breach by Not Buying Stanley’s Shares. The facts alleged by the Trustee in his counterclaims establish that the Szawlowski Companies made a timely offer to repurchase Stanley’s ownership interests for $4 million, the Trustee waived his contractual right to seek an independent appraisal and thus is bound by that offer, yet the Trustee has refused to accept payment in this amount. The Trustee’s claim that the Szawlowski Companies breached their contractual obligation to repurchase Stanley’s shares and membership interests therefore fails as a matter of law.
            2.1.5.1. Waiver of Right to Independent Appraisal. In May 2020, just eighteen days after Stanley died, the Szawlowski Companies timely exercised their right to repurchase his ownership interests. As noted above, this letter stated that the companies were acting pursuant to the 2009 SSRA, the 2016 Equity Agreement, and the 2018 SSRA Amendment. The Court has ruled that the 2016 Equity Agreement was not binding and did not alter any part of the 2009 SSRA, and that the portions of the 2018 SSRA Amendment that amended ¶¶ 4(d) and 4(f) of the “dissolution, liquidation and termination” section of the 2009 SSRA were invalid. As a result, $4 million purchase offer constituted a “proposed purchase price” within the meaning of the original, unamended ¶ 4(d) of the second section of the 2009 SSRA.
            Under the plain terms of the original, unamended ¶ 4(f) of this section of the 2009 SSRA, the Trust then had 30 days to give notice that he wanted to seek an independent appraisals of the companies’ net assets, and have that appraisal determine the appropriate purchase price for Stanley’s shares and membership interests. The Szawlowski Companies specifically reminded the Trustee of this deadline. Their May 22, 2020, letter said that the present owner of Stanley’s shares has “ thirty (30) days (sic) to inform the Szawlowski Companies in writing whether they wish to accept the $4 million payment or whether they wish to seek an independent valuation by qualified appraisers.”
            The Trustee concedes that he opted to reject the $4 million without ever giving notice that he wished to seek an independent appraisal. The Trustee alleges that he made two responses within 30 days of the May 22, 2020, letter, neither of which gave notice that the Trustee was invoking his right to an independent appraisal. As noted above, the Trustee specifically alleges in ¶ 238 of the amended counterclaims that “[a]ppraisal rights under Paragraph 4(d)” of the
 
                                                            -15-
 
second section of the 2009 SSRA “have never been triggered.” In other words, the Trustee concedes in his pleading that he did not invoke his right to an independent appraisal within 30 days after the Szawlowski Companies offered to repurchase Stanley’s ownership interests for $4 million. The Trustee is bound by that allegation. See G.L. c. 231, § 87 (“In any civil action pleadings … shall bind the party marking them.”); Adiletto v. Brockton Cut Sole Corp., 322 Mass. 110, 112 (1947) (this statute provides that “facts admitted in pleadings” are “conclusive upon” the party making them).
            The Trustee waived his right to seek an independent appraisal by not doing so within 30 days after the companies made their $4 million offer. As a result, the Szawlowski Companies are contractually entitled to repurchase Stanley’s shares for the proposed purchase price of $4 million, and the Trustee’s claim that the companies have breached an alleged contractual obligation to pay some higher amount fails as a matter of law.
            Parties to a contract are free to agree that certain events must occur before one of the parties may exercise a contractual right or must carry out some contractual obligation; in law-speak such provisions are called “conditions precedent.” See generally Massachusetts Mun. Wholesale Elec. Co. v. Town of Danvers, 411 Mass. 39, 45 (1991) (“MMWEC”).
            The contractual requirement that the Trustee had to give notice of his exercise of the right to an independent appraisal within 30 days after the Szawlowski Companies gave notice that they were exercising their option to repurchase Stanley’s share and membership interests was a condition precedent to the Trust’s right to obtain an appraisal. Cf. O’Flaherty v. Cunard S.S. Co., 281 Mass. 447, 451 (1933) (contract requirement that passenger give notice of claim for injury within 40 days after disembarking ship was condition precedent to right to maintain action).
            The Trustee’s letter dated June 1, 2020—in which the Trustee made a “demand” under ¶ 4(f) of the second section of the 2009 SSRA that the Szawlowski Companies repurchase Stanley’s shares and membership interests for fair market value—could not and did not eliminate the 30-day contractual deadline under ¶ 4(d) for the Trustee to seek an independent appraisal. If the Trustee could ignore without consequence the deadline for seeking an independent appraisal, merely by countering with his own demand that the companies buy Stanley’s shares and interests based on the fair market value of the companies’ assets, that would make the deadline superfluous and strip it of any practical
 
                                                            -17-
 
meaning. But a court must read an unambiguous business contract, if at all possible, in a manner that makes no provision superfluous. See, e.g., Lieber v. President and Fellows of Harvard College, 488 Mass. 816, 823 n.15 (2022) (“every word and phrase” of contract should be “given meaning, and none is to be rejected as surplusage if any other course is rationally possible”) (quoting Tupper v. Hancock, 319 Mass. 105, 109 (1946)).
            2.1.5.2. Unspecified Closing Date. The Szawlowski Companies’ offer to pay $4 million for Stanley’s ownership interests was sufficiently definite to constitute a valid exercise of the companies’ repurchase option, even though the 2009 SSRA says that the companies should have specified a closing date and they did not do so.
            The background law regarding interpreting contracts is relevant in deciding whether the repurchase notice was legally sufficient.
            If a contract fails to specify a time within which a contractual obligation must be performed or a contractual right must be exercised, “courts may infer that the parties intended a ‘reasonable’ date if this can be done without changing the essence of the contract.” Dalrymple v. Town of Winthrop, 97 Mass. App. Ct. 547, 555 (2020), quoting Duff v. McKay, 89 Mass. App. Ct. 538, 545 (2016). For example, a contract that requires payment to be made without specifying when that will happen should be understood to require the payment to be made within a reasonable time. See, e.g., A.B.C. Auto Parts, Inc. v. Moran, 359 Mass. 327, 329 (1971); Tzitzon Realty Co. v. Mustonen, 352 Mass. 648, 654 (1967); Barber v. Fox, 36 Mass. App. Ct. 525, 531 (1994).
            Similarly, the companies’ offer to repurchase Stanley’s shares must be understood as offering to close within a reasonable time, and a time that would be convenient for the estate’s representative. If a promise to pay a specified amount with no reference to timing is enforceable, it follows that the companies’ repurchase offer is enforceable under the terms of the 2009 SSRA as amended, even though it did not specify a time for closing.
            The 2009 SSRA did not require that the companies complete their repurchase of Stanley’s shares and membership interest within any specified period of time. If it had, then failure to fix a closing date within the specified period would have been a material deviation from the terms of the contract and render unenforceable the attempt to exercise the option. See Cadillac Auto. Co. of Boston v. Stout, 20 Mass.  App. Ct. 906 (1985) (rescript) (option to purchase real estate
 
                                                            -18-
 
provided that any notice exercising the option had to specify date and time for delivery of deed not less than 10 or more than 30 days later). But that rule does not apply here.
            It makes sense that the companies were not required to consummate the repurchase of Stanley’s shares within a specified time. The contract gave the Trustee 30 days after the companies provided notice that they were exercising their repurchase right to ask for an independent appraisal. The companies could not specify a meaningful closing date until they know whether there would be such an appraisal.
            In the context of all of the provisions of the 2009 SSRA, the initial failure to propose a closing date was not material, as the other terms of the SSRA make clear that proposing a closing date was not an essential feature of a repurchase offer. Cf. EventMonitor, Inc. v. Leness, 473 Mass. 540, 546 (2016) (where relevant evidence is undisputed, whether breach of contract is material is question of law for court to answer, based on whether breach involves “an essential and inducing feature of the contract”) (quoting Anthony’s Pier Four, Inc. v. HBC Assocs., 411 Mass. 451, 470 (1991)).
            2.1.6. Claim for Breach by Not Distributing Funds. The Trustee also contends that the defendants-in-counterclaim have breached the 2009 SSRA by ending monthly distributions and annual distributions of dividends or profits to the shareholders.
            These allegations do not plausibly suggest that the Trustee is entitled to any relief, because there is no provision in the 2009 SSRA that requires any of the Szawlowski Companies to pay dividends or distribute profits or funds to its owners, and the facts alleged do not plausibly suggest there was any other contractual obligation to do so. Cf. Donahue v. Rodd Electrotype Co. of New England, Inc., 367 Mass. 578, 589–590 (1975) (absent clear contract provision to the contrary, distribution of dividends “rests within the sound direction of the directors”) (quoting Crocker v. Waltham Watch Co., 315 Mass. 397, 402 (1944)); see also Merola v. Exergen Corp., 423 Mass. 461, 464 (1996) (“Even in close corporations, the majority interest ‘must have a large measure of discretion, for example, in declaring or withholding dividends[.]”) (quoting Wilkes v. Springside Nursing Homes, Inc., 370 Mass. 842, 851 (1976)).
            The Trustee’s allegations that Frank and Chester continue to receive distributions, or that the amounts distributed to them or for their benefit far
 
                                                            -19-
 
exceeds the companies’ payments to Stanley or the Trust, may be relevant to the Trustee’s claim against Frank and Chester for breach of fiduciary in docket 1980CV00132. But they do not plausibly suggest that Frank, Chester, or any of the Szawlowski Companies may be liable for breach of contract.
            2.1.7. Implied Covenant Claim. The counterclaim for breach of the implied covenant of good faith and fair dealing adds nothing of substance to the Trustee’s counterclaim for breach of the express terms of the 2009 SSRA.
            This implied covenant “does not create rights or duties beyond those the parties agreed to when they entered into the contract.” Boston Med. Ctr. Corp. v. Secretary of Executive Office of Health & Human Servs., 463 Mass. 447, 460 (2012) (affirming dismissal of claim), quoting Curtis v.  Herb  Chambers  I-95,  Inc.,  458 Mass. 674, 680 (2011). “The implied covenant ‘concerns the manner of performance’ and ‘exists so that the objectives of the contract may be realized.’ ” Beauchesne v. New England Neurological Assocs., P.C., 98 Mass. App. Ct. 716, 722 (2020), rev. denied, 486 Mass. 1111 (2021), quoting Ayash v. Dana- Farber Cancer Inst., 443 Mass. 367, 385, cert. denied sub nom. Globe Newspaper Co. v. Ayash, 546 U.S. 927 (2005). In other words, it only governs “the manner in which existing contractual duties are performed.” Eigerman v. Putnam Investments, Inc., 450 Mass. 281, 289 (2007).
            The facts alleged by the Trustee in his counterclaims do not plausibly suggest that the Szawlowski Companies, Frank, or Chester breached the implied covenant of good faith and fair dealing.
            2.2. Breach of Fiduciary Duty. Though the amended counterclaims do not include a separate count for breach of fiduciary duty, paragraphs 267 and 275 allege that the Szawlowski Companies made larger distributions to Frank and Chester than to the Trust, and that this constitutes a violation of fiduciary duties allegedly owed by the Companies. Paragraphs 245 through 249 appear to allege other breaches of fiduciary duty by Frank and Chester.
            The Court will treat these parts of the amended counterclaims as asserting a claim for breach of fiduciary duty against each of the plaintiffs, given that the Trust may press at trial any legal theory fairly raised by the factual allegations in its amended pleading, even if that theory is not expressly invoked in its counterclaims. See, e.g., Republic Floors of New England, Inc. v. Weston Racquet Club, Inc., 25 Mass. App. Ct. 479, 487 (1988).
 
                                                            -20-
 
            2.2.1. Against the Szawlowski Companies. The Court will dismiss the fiduciary duty claim against the Szawlowski Companies under Rule 12(b)(6) because those entities did not owe the Trustee any fiduciary duty. Under Massachusetts law, a corporation does not owe a fiduciary duty to its shareholders; a claim for breach of fiduciary duty may lie against majority shareholders that control the company, but not against the corporation. See Merola, 423 Mass. at 463 n.3; accord, e.g., In re Solera Ins. Coverage Appeals, 240 A.3d 1121, 1135 n.93 (Del. 2020) (well established that corporations do not owe fiduciary duties to their shareholders).[19] The same principle applies to limited liability companies; an LLC does not owe a common-law fiduciary duty to its members. See Durham v. Grapetree, LLC, C.A. No. 2020-0175-SG, 2021 WL 82338, at *3 (Del. Ch. Jan. 11, 2021); ULQ, LLC v. Meder, 666 S.E.2d 713, 181 (Ga. Ct. App. 2008). 
            2.2.2. Against Frank and Chester. The Court will dismiss the fiduciary duty claim against Frank  and Chester because the Trustee has already asserted such a claim based on many of the same factual allegations in a prior pending action, Hampshire Superior Court docket number 1980CV00132. A court may dismiss civil claims due to the “pendency of a prior action in a court of the Commonwealth.” See Mass. R. Civ. P. 12(b)(9). “The rule prohibits the long- barred practice of claim-splitting.” Lyons v. Duncan, 81 Mass. App. Ct. 766, 771 (2012), quoting M.J. Flaherty Co. v. United States Fid. & Guar. Co., 61 Mass. App. Ct. 337, 339 (2004). “A dismissal under [Rule] 12(b)(9) may be appropriate if the parties and issues are identical to those in the prior pending action.” Harvard Cmty. Health Plan, Inc. v. Zack, 33 Mass. App. Ct. 649, 652 (1992). Since the Trustee is already suing Frank and Chester for breach of fiduciary duty in a
 
-------------------------------------
 
[19] In Selmark Associates, Inc. v. Ehrlich, 467 Mass. 525, 526 (2014), the Supreme Judicial Court affirmed a verdict in favor of a shareholder on his breach of fiduciary duty counterclaim against a corporation. But it appears that the issue of whether a corporation owes a fiduciary duty to its shareholders was never raised in Selmark, and the Court never overruled or even address its clear holding in Merola that corporations owe no such duty. As a result, Selmark does not hold that corporations owe a fiduciary duty to their shareholders. “The most that can be said is that the point was in the case[] if anyone had seen fit to raise it. Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.” McEvoy Travel Bureau, Inc. v. Norton Co., 408 Mass. 704, 719 n.12 (1990), quoting Webster v. Fall, 266 U.S. 507, 511 (1925).
 
                                                            -21-
 
2019 civil action, he may not assert the same claim against them for a second time in this 2021 action.
            2.3. Claims concerning 44 Christian Lane. The remaining claims concern residential property located at 44 Christian Lane in Whately, Massachusetts, title to which is held by Szawlowski Realty, Inc.
            2.3.1. Resulting Trust. The third counterclaim seeks to enforce an alleged resulting trust in 44 Christian Lane for Stanley’s benefit, that he allegedly transferred to the Trust.
“A resulting trust in real estate arises where one party furnishes the consideration to purchase property, not intending a gift or advancement, yet title is taken in the name of another.” Fortin v. Roman Catholic Bishop of Worcester, 416 Mass. 781, 789 (1994). “[I]n such a case a trust results in favor of the person who furnished the consideration.” Meskell v. Meskell, 355 Mass. 148, 150 (1969). An equitable claim for breach of a resulting trust “is a recognized cause of action.” Heavey v. Maloof, 453 Mass. 259, 264–265 (2009).
            The facts alleged by the Trustee establish that this claim is time-barred. A cause of action for breach of a resulting trust “accrues when the plaintiff becomes aware that the trust has been repudiated;” a claim to enforce the resulting trust must be brought within six years after it accrues. See Stapleton v. Macchi, 401 Mass. 725, 729 (1988). The Trustee alleges that the Frank and Chester began to pressure Stanley to leave the property in 1999. This cause of action accrued at that time, because that is when Stanley was informed that Frank and Chester were repudiating the alleged resulting trust. See Houle v. Low, 407 Mass. 810, 812 (1990). The resulting trust claim is therefore time-barred because the Trust first asserted this claim in July 2022.
            In any case, the resulting trust claim would fail as a matter of law even if it were not time barred. The Trust contends that Stanley was entitled to the 44 Christian Lane property because he came to expect that the property would be part of his compensation for his work on behalf of the Szawlowski Companies. But the facts alleged by the Trust do not plausibly suggest that the Szawlowski Companies purchased the property based on a shared understanding or agreement with Stanley that he would receive the property in exchange for his contributions to the Szawlowski Companies, and therefore do not plausibly suggest that the Trust holds a resulting trust in this property. See Coelho v. Coelho, 2 Mass. App. Ct. 433, 435–436 (1974) (affirming dismissal of claim).
 
                                                            -22-
 
            Though paragraph 35 of the amended counterclaims alleges that Stanley unilaterally asserted that he should be given the property because he had been underpaid by the companies “when he was younger”, that does not state a claim for a resulting trust.
            2.3.2. Quantum Meruit. The fourth counterclaim seems to allege that the Trust should be given the title in 44 Christian Lane as compensation to Stanley for the many years that he allegedly worked for the Szawlowski Companies without pay.
            This claim is also time barred. The Trustee asserts that Stanley worked without pay for the Szawlowski Companies from the time he was a child until he was 40 years old. The counterclaims also allege that Stanley continued to work for the companies until he was in his mid-70s. Any claim by Stanley for quantum meruit compensation accrued decades ago, no later than when he was 47 years old. See Lipsitt v. Plaud, 466 Mass. 240, 251-252 (2013) (six-year limitations period applies to quasi-contractual claims seeking compensation for services rendered). The Trustee cannot now assert a claim on behalf of Stanley that has been barred by the statute of limitations for decades.
            Though the Trustee alleges that Szawlowski holds 44 Christian Lane in “constructive trust” for the Trust, that adds nothing to the quantum meruit claim. A constructive trust may be imposed “to prevent unjust enrichment resulting from fraud, a violation of a fiduciary duty or confidential relationship, mistake, or ‘other circumstances’ in which a recipient's acquisition of legal title to property amounts to unjust enrichment.” Maffei v. Roman Catholic Archbishop of Boston, 449 Mass. 235, 246 (2007), quoting Fortin vv. Roman Catholic Bishop of Worcester, 416 Mass. 781, 789 (1994). Thus, “a constructive trust is an equitable remedy, not an independent cause of action.” Sacco v. Circosta, 93 Mass. App. Ct. 1113, 2018 WL 2436734, at *2 (2018) (Rule 1:28 decision).
            In any case, the facts alleged do not plausibly suggest that a constructive trust should be imposed on the 44 Christian Lane property in favor of the Trust because they do not plausibly suggest that Szawlowski Realty obtained title to the property by fraud, in violation of a fiduciary duty, or by unfairly using confidential information obtained from Stanley. See Coelho, 2 Mass. App. Ct. at 435 (affirming dismissal of claim); see also Meskell v. Meskell, 355 Mass. 148, 151 (1969).
 
                                                            -23-
 
2.3.3. Chapter 93A. The allegation that the defendants-in-counterclaim have improperly sought compensation from the Trustee  for  unpaid  rent on  the 44 Christian Lane properly does not plausibly suggest that any of this conduct occurred within "trade or commerce” and thus does not state a viable claim under G.L. c. 93A. Cf. Office One, Inc. v. Lopez, 437 Mass. 113, 125 (2002) (“Violations of G.L. c. 93A require unfair or deceptive acts or practices ‘in the conduct of any trade or commerce.’”) (quoting G.L. c. 93A, § 2).
            What is alleged here is a private dispute among co-owners of a closely-held business as to whether one of them should reimburse the business for using, or allowing a relative to use, property owned by the business.
            Even assuming that the alleged demands for rent from the Trustee were baseless or improper, that does not support a claim under c. 93A. “[D]isputes between parties in the same venture do not fall within the scope of G.L. c. 93A[.]” Selmark Assocs., Inc. v. Ehrlich, 467 Mass. 525, 549 (2014), quoting Szalla v. Locke, 421 Mass. 448, 451 (1995). “ ‘Intra-enterprise’ disputes, including those … between or among fellow shareholders, are essentially private in nature, and thus not considered ‘commercial transactions’ within the meaning of c. 93A.” Id. at 550, quoting Milliken & Co. v. Duro Textiles, LLC, 451 Mass. 547, 563 (2008).
            2.3.4. Claims as to Tenancy. Finally, the Trustee asserts a hodge-podge of claims alleging various violations of the rights of the tenant of 44 Christian Lane. But the Trustee states, in ¶ 17 of his affirmative defenses to the complaint in this action, that the Trustee never occupied or resided at 44 Christian Lane. In his written opposition, the Trustee states that “Stanley S. Szawlowski and Gloria Szawlowski are in possession of [the] residential real estate at 44 Christian Lane.” Since neither the Trustee nor the Trust is the tenant, the Trustee cannot assert these claims. Nothing in the facts alleged by the Trustee plausibly suggests that he has standing to raise any claim concerning anyone else’s tenancy at this property.
            3. Third-Party Claims against Shelley, Pam, Melanie, and Diane. The Court will dismiss the third-party claims for the reasons discussed below.
            Shelley, Pam, Melanie, and Diane contend that allegations made by the Trustee in his amended pleading that are based on “information and belief” are “insufficient as a matter of law.” That is incorrect. “For purposes of surviving a motion to dismiss, … a party may allege facts based on ‘information and belief’ ” and the court must “assume the truth of such allegations.” Polay v.
 
                                                            -24-
 
McMahon, 468 Mass. 379, 383 n.5 (2014) (partially reversing Rule 12(b)(6) dismissal). The Court will therefore accept the Trustee’s allegations made on information and belief, and assume that they are true, in deciding the third- party defendants’ motion to dismiss.
            3.1. Intentional Interference with the 2009 SSRA. The intentional interference claim is based on allegations that the third-party defendants induced Frank, Chester, and the Szawlowski Companies to violate their contractual obligations to Stanley or the Trustee under the 2009 SSRA.
            To state a claim for intentional interference with contractual relations, a party must allege facts plausibly suggesting that: “(1) [it] had a contract with a third party; (2) the defendant knowingly induced the third party to break that contract; (3) the defendant’s interference, in addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed by the defendant's actions.” Weiler v. PortfolioScope, Inc., 469 Mass. 75, 84 (2014), quoting G.S. Enters., Inc. v. Falmouth Marine, Inc., 410 Mass. 262, 272 (1991).
            If the third party did not breach their contract, then a defendant cannot be held liable for tortiously interfering with a contract. See JNM Hospitality, Inc. v. McDaid, 90 Mass. App. Ct. 352, 354–55 & 357 (2016) (where landlord did not breach lease by failing to make nonexclusive parking spaces available to customers of restaurant lessee, third party could not be liable for intentionally interfering with lease to detriment of tenant); Cavicchi v. Koski, 67 Mass. App. Ct. 654, 661 (2006) (where clients did not breach contingent fee agreements when they discharged attorney, new lawyer who convinced them to do so could not be liable for intentional interference with contract).
            As discussed above, the facts alleged above do not plausibly suggest that the Szawlowski Companies, Frank, or Chester breached any contractual obligation, or that the Trustee was harmed as a result of any alleged breach. For the same reasons, the Trustee has failed to state a viable claim for tortious interference against the third-party defendants.
            3.2. Breach of Fiduciary Duty. The Court will dismiss the third-party claim for breach of fiduciary duty because the facts alleged do not plausibly suggest that any of the third-party defendants owe or owed a fiduciary duty to Stanley or to the Trust.20
 
-------------------------------------
 
[20] It does not appear that the Trustee’s claim for breach of fiduciary duty against Shelley, Melanie, Pam, and Diane should be dismissed under Rule 12(b)(9). Though there is a prior pending action (docket 1980CV00132) in which Shelley, Pam, and Melanie have been sued for breach of fiduciary duty, the amended complaint in that action says that claim is being asserted derivatively on behalf of Szawlowski Packers LLC; the original complaint asserted this claim on behalf of the Trust, but the amended complaint changed it to a derivative claim. The Court is not aware of a prior pending claim by the Trustee on behalf of the Trust for breach of fiduciary duty against any of the third-party defendants in this action. 
 
                                                            -25-
 
            The third-party complaint alleges that Shelley, Melanie, Pam, and Diane have all worked for the Szawlowski Companies, and that Shelly, Melania, and Pam have been directors of the four Szawlowski corporations and managers of the one LLC since late 2018.
            The Court will therefore assume that the third-party defendants each owed fiduciary duties to the Szawlowski Companies. Any employee who occupies a position of trust and confidence owes their employer a duty of loyalty. See Chelsea Industries, Inc. v. Gaffney, 389 Mass. 1, 11 (1983). And officers, directors, or managers of a corporation or LLC owe fiduciary duty of loyalty to protect the interests of the company that they serve. In re Barrett, 447 Mass. 453, 464 (2006); Genesis Technical & Financial, Inc. v. Cast Navigation, LLC, 74 Mass. App. Ct. 203, 203-204 and 211-212 (2009).
            But nothing in the Trustee’s pleading suggests that Shelley, Melanie, Pam, or Diane ever owed a fiduciary duty to Stanley or to the Trust. The Trustee has not cited any authority suggesting that a corporate employee, director, or manager owes a fiduciary duty to the shareholders or members who own the company. As noted above, a corporation does not owe a fiduciary duty to its shareholders. See Merola, 423 Mass. at 463 n.3. It follows that the corporation’s employees, officer, and managers do not owe such a duty to the shareholders either.
            3.3. Civil Conspiracy to Breach Fiduciary Duty and Aiding and Abetting Breach of Fiduciary Duty. The Court will also dismiss the claims against Shelly, Pam, Melanie, and Diane for allegedly conspiring to breach the fiduciary duties that Frank and Chester owed to Stanley and the Trust, or for aiding and abetting Frank’s and Chester’s alleged breach of those duties.
            To the extent these claims are based on alleged participation by the third-party defendants in procuring the 2018 SSRA Amendment, these claims must be dismissed because the facts alleged do not plausibly suggest that the Trustee
 
                                                            -26-
 
was harmed or injured by that amendment. As discussed above, parts of that amendment are invalid, but the Trustee has not alleged facts suggesting that Stanley or the Trust was injured as a result.
            To the extent that these claims are based on any conduct that took place, were known to, and allegedly injured Stanley or the Trust before July 12, 2019— including but not limited to (i) the 2018 election of Frank, Chester, Shelley, Pam, and Melanie to be directors of each corporation and managers of the LLC, as well as (ii) all of the things that the Trustee allegedly saw or heard before February 11, 2019, while he was still working for C&F Farms—these claims are dismissed because they are barred by the three-year statute of limitations that governs tort claims.
            Finally, to the extent that these claims are based on allegations about things that happened less than three years before the Trustee first filed his third-party claims, these claims fail because the facts alleged do not plausibly suggest that any of the third-party defendants either conspired to breach a fiduciary duty or aided and abetted any breach of fiduciary duty. The Trustee’s conclusory allegations of such misconduct do not state a claim. “Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.” Doe v. American Guar. & Liab. Co., 91 Mass. App. Ct. 99, 105 (2017), quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). “While ‘detailed factual allegations’ are not required at the pleading stage, mere ‘labels and conclusions’ will not survive a motion to dismiss.” Burbank Apartments Tenant Ass’n v. Kargman, 474 Mass. 107, 116 (2016), quoting Iannacchino, 451 Mass. at 636.
ORDERS
            The Trustee’s motion for leave to amend his counterclaims and third-party claims in this action is denied as moot, because the Trustee was entitled to amend his pleading once as of right and the amendment was therefore effective when filed.
            The motion by the defendants-in-counterclaim to dismiss the counterclaims against them (doc. no. 28) is denied in part with respect to so much of the counterclaims that challenge the validity of the November 30, 2018, amendment to the 2009 shareholder stock redemption agreement. The plaintiff- in-counterclaim, Joseph E. Szawlowski, as Trustee of the Stan and Mary Ellen Szawlowski Family Trust, is entitled to declaratory judgment in his favor on
 
                                                            -27-
 
this portion of his counterclaims, as follows. When final judgment enters, it shall include a declaration that paragraphs 4 and 5 of the November 30, 2018, amendment to the 2009 shareholder stock redemption agreement are invalid and therefore void with respect or as applied to any ownership or membership interests that had belonged to Stanley E. Szawlowski.
            The motion by the defendants-in-counterclaim to dismiss the counterclaims against them is allowed in part with respect to all of the other counterclaims, including all requests for injunctive relief or damages. The counterclaims against Frank and Chester Szawlowski for breach of fiduciary duty shall be dismissed without prejudice pursuant to Mass. R. Civ. P. 12(b)(9). The remaining counterclaims seeking injunctive relief or damages shall be dismissed with prejudice pursuant to Rule 12(b)(6).
            The motion by the third-party defendants to dismiss all third-party claims against them (doc. no. 30) is allowed. When final judgment enters, the third- party claims shall be dismissed with prejudice under Rule 12(b)(6).
            The parties shall report in writing by April 28, 2023, whether they will agree to retain and work with a neutral mediator to explore whether, in light of the Court’s rulings, they can reach a global settlement of their pending lawsuits.
 
 
                                                            -28-
 
xxz